Myrtle HOLLMAN, Appellant,

v.

Catherine BRADY, Appellee.

No. 14809.

United States Court of Appeals
Ninth Circuit.

May 22, 1956.

Harold J. Butcher, Anchorage, Alaska, for appellant.

McCutcheon & Nesbett, Buell A. Nesbett, Anchorage, Alaska, for appellee.

Before DENMAN, Chief Judge, and ORR and LEMMON, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment of the District Court for the Territory of Alaska awarding appellee $1,500 for slander. Appellant contends that her statement was not slanderous per se, that the District Court erred in not instructing the jury that the slanderous statement must have proximately caused appellant's damage, and that irregularities in the selection of a jury constituted reversible error.

The uncontradicted testimony is that appellant stated to appellee's husband in the presence of others, "You're not so smart. Your wife is an ex-whore from Butte, Montana," and as a result appellee's husband would doubt her when he had been drinking and subject her to verbal abuse about the matter. This caused appellee to lose weight and suffer emotional distress.

Appellant argues that her statement about appellee was not slanderous per se under Alaska law, and consequently appellee had the burden of proving special damages resulting from it.[1] At common law in the Nineteenth Century a statement imputing unchastity to a woman, or even professional unchastity, was not considered slanderous per se.[2] This was a consequence of an earlier division of powers between the civil and ecclesiastical courts rather than any reasonable conclusion as to the nature of such a statement and its effect on the reputation of a woman. The English judges de-

1. See Prosser on Torts § 92.

2. Ibid; Newell on Slander and Libel § 123 (4th ed., 1924).

nounced the rule, but it was not changed until the Slander of Women Act in 1891.[3]

A number of American decisions have followed the English common law view that to call a woman a whore was not slanderous per se.[4] Today the majority of American jurisdictions have wiped out this rule—called "a reproach to the law" by Dean Prosser—by statute[5] since this is a type of statement almost certain to cause serious injury to a woman's reputation.

Alaska has no such statute, and in 1952 when the language was used to call a woman a whore was not to charge her with a crime of moral turpitude. It was not until 1955 that prostitution was made illegal in Alaska.[6] Appellee defends her judgment by pointing out that Section 2–1–2, A.C.L.A. 1949, provides that "So much of the common law *as is applicable* * * * is * * * [the] law in the Territory of Alaska." [Emphasis added.] She contends that a rule condemned by courts and writers, based on a historical division of function between civil and ecclesiastical courts, and changed in England and most states of the United States before Alaska was settled by large numbers of white men is not applicable.

This was the approach taken by the Colorado Supreme Court in Biggerstaff v. Zimmerman, 1941, 108 Colo. 194, 114 P.2d 1098 in rejecting the common law rule without the benefit of a statute. That court said at 114 P.2d 1099:

"As to the proposition under discussion, nonliability under the common law was predicated upon the jurisdiction of ecclesiastical courts of such offenses. No such courts ever existed in this jurisdiction, and they are foreign to our fundamental law; therefore, there is no reason to suppose that the common-law rule

for which counsel for defendant contend ever was applicable in this state. Moreover, our democratic mode of life is not comparable with the conditions of social life in existence prior to the fourth year of the reign of James I of England. Unlike that period, American tradition and civilization, as we know it, has a far greater appreciation of the potential worth and dignity of the individual human being, and the right to be protected therein. English judges many years ago denounced the common-law rule here involved as barbarous, with the result that Parliament in 1891 repealed the same. * * * To adopt this common-law rule in Colorado would be invoking an anachronism, inconsistent with our social and political concepts as reflected in the laws and Constitution of our state."

■ The District Court of Alaska did not err in following the reasoning of the Colorado Supreme Court. The common law rule was clearly outmoded.[7] Appellant could hardly be said to have relied on the distinction between slander per se and slander per quod hinging on the necessity to prove special damages at the time she uttered the statement "Your wife is an ex-whore from Butte, Montana." It should come as no surprise that the statement is slanderous and very likely to cause serious damage.

Since appellant's statement was slanderous per se it is unnecessary to consider her contention that the Court erred in not instructing the jury that the remark must have proximately caused the damages proved by appellee.

Appellant finally contends that irregularities in the selection of a jury to hear this case constitute reversible error. On

3. Ibid.

4. See cases collected in 11 A.L.R. 669 in an annotation on "Orally charging a woman with being a whore or prostitute as actionable per se."

5. See, e. g., Calif.Civil Code § 46(4).

6. Session Laws of Alaska, Ch. 104 (1955).

7. Cf. Hurtado v. People of State of California, 1884, 110 U.S. 516, 530, 4 S.Ct. 111, 118, 292, 28 L.Ed. 232 where it was said the "Flexibility and capacity for growth and adaptation is the peculiar boast and excellence of the common law."

the day this case was to be tried both Judges Folta and McCarrey were holding court in Anchorage. Twice the usual number of qualified jurors were called. The group was divided by taking every other juror and sending him to Judge McCarrey's court while the remaining jurors stayed in Judge Folta's court to constitute the panel from which twelve were selected by a drawing to hear this case.

Section 55–7–41, A.C.L.A., 1949, provides:

"Jurors for the trial of causes both civil and criminal in the District Court shall be chosen in the following manner, to-wit:

"When a case which is to be tried by a jury is called for trial, the clerk shall draw from the trial jury box containing the names of those on the regular panel who have been summoned and not excused as jurors, the names of twelve (12) persons; provided that if the panel consists of twenty-four (24) or more jurors available for immediate jury duty, and if the name of a juror is called who is then engaged in trying of or deliberating on any other case, such name shall be rejected and another name drawn in his stead, without delaying the completion of the panel. * * * "

Section 55–7–31, A.C.L.A., 1949, provides:

"No case, either civil or criminal, shall be tried in any of the Courts of the Territory of Alaska, except in accordance with the provisions of this Act, and any violation of the provisions of this Act is hereby declared to be reversible error. * * * "

Despite Section 55–7–31, this Court has held that it would not reverse unless the defect in the selection of the

jury constituted prejudicial error.[8] The Territorial Legislature cannot bind this Court in the exercise of its appellate jurisdiction and overturn an act of Congress giving it power to reverse a judgment only on grounds which "affect the substantial rights of the parties."[9]

Appellant has failed to show how she was prejudiced by the method used to select the jury to try this case. Out of more than twenty-four prospective jurors twelve were selected by lot. There was nothing inherently unfair in the system which was used.

The judgment is affirmed.

---

8. Hauptman v. United States, 9 Cir., 1930, 43 F.2d 86.

9. 28 U.S.C. § 2111 provides: "On the hearing of any appeal * * * the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."