Jorge CALANTAS, Appellant,

v.

STATE of Alaska, Appellee.

No. 3663.

Supreme Court of Alaska.

Aug. 31, 1979.

Dana Fabe, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for appellant.

William H. Hawley, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

BURKE, Justice.

After trial by jury Jorge Calantas was adjudged guilty of two counts of assault with intent to kill. AS 11.15.160. The superior court sentenced him to concurrent six year terms of imprisonment. Alleging multiple errors, Calantas filed this appeal. We affirm his conviction and sentence.

I

On October 21, 1976, Calantas and some friends attended a movie and then went to a bar. A man with another group at a nearby table apparently became angry when Calantas refused to come over and drink with him. When Calantas left the bar, the group from the other table followed. After leaving the bar Calantas turned to look back and saw the group walking behind him. He then armed himself with a pistol. Calantas testified that,

when he turned a second time, he thought he saw one of the men reach for a gun and that he (Calantas) fired three or four shots into the ground to frighten the other individuals. The shots wounded two people. Calantas was subsequently indicted on two counts of assault with intent to kill and was convicted following a trial by jury.

## II

Calantas's first claim of error concerns the methods used to assemble the panel of prospective jurors needed for his trial. Specifically he complains of the court clerk's decision to disqualify all jurors living outside of Kodiak proper and her later decision to summon only those Kodiak residents that she could reach by telephone. These methods, he argues, violated the statutory requirement that the names of prospective jurors be randomly selected from those qualified, AS 09.20.060 & 09.20.070, and the requirement of Criminal Rule 24.1 that petit jurors be selected from "the population within a fifty-mile radius of the urban center designated as the site of the criminal trial." Rule 24.1(a), Alaska R.Crim.P. He further argues that the decision to summon only those jurors that could be reached by telephone violated other provisions of the court's rules and destroyed any hope of a random selection of names for the jury panel. *See, e. g.,* Rule 20(d), Alaska Admin.R.

Selection of jurors by any method which fails to substantially comply with the statutory requirements is reversible error if the failure "prejudices the rights of a party." AS 09.20.040. Here there is no doubt that there were technical violations of the statutory selection methods; like the Fifth Circuit, however, we believe that such violations "constitute 'substantial failure to comply' [only] when they affect the random nature or objectivity of the selection process." *United States v. Kennedy*, 548 F.2d 608, 612 (5th Cir. 1977).[1]

Calantas's trial and the events leading to his indictment and conviction took place in Kodiak. In mid-March 1977, approximately three weeks before the trial was scheduled to begin, the deputy clerk of court received a computer list of potential jurors from the office of the area court administrator in Anchorage. Questionaires were mailed to those on the list, but the responses indicated that about two-thirds of the individuals listed had moved or were otherwise unavailable for service. When she became aware of what she characterized as the "terror of the situation," a week before the scheduled trial date, the deputy called Anchorage and asked for a list of additional prospective jurors. Due to an unexplained delay, the new list was not received until Friday, April 1, only three days before Calantas's trial was to begin on Monday, April 4.

The deputy clerk and her assistant spent that evening and the next day, Saturday, trying to identify a sufficient number of available individuals from the 300 named on the computer list to allow Calantas's trial to proceed as scheduled. In doing so they first excluded those not living in Kodiak proper, approximately 100 people. Some of those excluded, however, lived within a fifty-mile radius of Kodiak. From the remaining 200 names, they identified those whose names appeared in the Kodiak telephone directory. There were eighty such individuals. The eighty names were then placed in a box from which the deputies drew forty names at random. Because they were unable thereafter to reach a sufficient number of these individuals to provide a panel of suitable size, they ultimately attempted to telephone all eighty people whose names were in the box, eventually reaching fourteen of them. These fourteen, together with twenty-one from the original, mid-March list made up the panel of prospective jurors provided for Calantas's trial.

The trial judge, in denying Calantas's motion to strike the array, acknowledged that

---

1. *Kennedy* was decided under the federal Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1869 (1976). Section 1867(a) of the Act provides that an indictment may be dismissed where there has been a "substantial failure to comply" with statutory jury selection procedures.

the mid-March list was inadequate and that the second list was not furnished in a timely fashion; he found that the additional fourteen people were secured from a fair cross-section of the community and that the group included three or four people of the same occupation as the defendant and one who, like Calantas, was a Filipino. He ruled that the situation was the result of extraordinary circumstances calling for him to exercise his discretion and found that the selection procedures had not prejudiced the defendant.

Despite Calantas's assertions to the contrary, we think the trial court's assessment of the situation was correct. Therefore, we find nothing in the jury selection process that requires us to reverse his conviction.

### III

■ Calantas next contends that the trial court erred in failing to grant his motion for judgment of acquittal. *See* Rule 29, Alaska R.Crim.P. He argues that there was "no evidence" to support the jury's conclusion that he assaulted his victims with the specific intent to kill them.

Viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the state, we believe that fair-minded people, in the exercise of reasonable judgment, could differ on the question of whether Calantas acted with the specific intent to kill. Thus, his motion for judgment of acquittal was properly denied. *Des Jardins v. State*, 551 P.2d 181, 185 (Alaska 1976).

### IV

■ As it was required to do, the superior court instructed the jury that a specific intent to kill was an essential element of the crimes charged and that it was incumbent upon the state to prove beyond a reasonable doubt that Calantas acted with such intent before it was entitled to a conviction for assault with intent to kill. The jury, however, was also instructed:

It is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted. So unless the contrary appears from the evidence, the jury may draw the inference that the accused intended all the consequences which one standing in like circumstances and possessing like knowledge should reasonably expect to result from any act knowingly done or knowingly omitted by the accused.

Calantas made no objection to this instruction in the court below but now claims that it was erroneously given, arguing that it amounted to a general intent instruction that conflicted with the other instructions requiring proof of a specific intent. This error, he further contends, was made worse when the court defined the term "wilfully," as used in his indictment, as follows:

The word "wilfully," when applied to the intent with which an act is done or omitted and as used in the instructions, implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage.

These instructions, according to Calantas, could have misled the jury into believing that no specific intent to kill was necessary for a conviction of assault with intent to kill.

The first instruction that he complains of, sometimes called the *Mann*[2] instruction, was condemned by this court in *Menard v. State*, 578 P.2d 966 (Alaska 1978). In that case, decided after Calantas's trial, we held that it was error to give the instruction and "admonish[ed] Alaska trial courts to [stop] using it." *Id.* at 970. Following the example set by the Fifth Circuit, however, "we decline[d] to hold that this error will always be deemed reversible." *Id.*

The defect that concerned us in *Menard* is that the words "so unless the contrary appears from the evidence" may result in an

---

2. The instruction derives its name from *Mann v. United States*, 319 F.2d 404 (5th Cir. 1963), cert. denied, 375 U.S. 986, 84 S.Ct. 520, 11 L.Ed.2d 474 (1964).

---

impermissible shifting of the burden of proof by requiring the defendant to prove his lack of intent. Here we believe the other instructions that were given made it absolutely clear to the jury that it was the state's burden to prove beyond a reasonable doubt that Calantas acted with the specific intent to kill and that that burden remained with the state throughout the trial. We are equally convinced that, when the instructions are considered as a whole, the jury could not have been misled into thinking that a general intent was all that was required for conviction of the crime of assault with intent to kill.

## V

■ Calantas's final contentions are that in sentencing him to concurrent six-year terms [3] the superior court (1) failed to give proper consideration to his potential for rehabilitation and (2) violated the constitutional prohibition against double jeopardy.[4]

It is clear that separate sentences may be imposed where there is evidence to support the conclusion that the offender intended to harm more than one person. *Cooper v. State*, 595 P.2d 648 (Alaska 1979); *Thessen v. State*, 508 P.2d 1192, 1197 (Alaska 1973). In this case, we believe that there was evidence supporting the jury's conclusion that Calantas intended to kill both of his victims. Thus, it was proper for the court to impose separate sentences; the constitutional prohibition against double jeopardy was not violated. *Id.*

Calantas's claim that the trial judge failed to consider his potential for rehabilitation is not supported by the record.

AFFIRMED.

---

**3.** The crime of assault with intent to kill is punishable by imprisonment "for not more than 15 years nor less than one year." AS 11.15.160.

**4.** *See* Alaska Const. art. I, § 9.