Peter DANA, a/k/a Peter Olsen, Appellant,

v.

STATE of Alaska, Appellee.

No. 4888.

Court of Appeals of Alaska.

Jan. 22, 1981.

William F. Reeves, Abbott, Lynch & Farney, Anchorage, for appellant.

Charles M. Merriner, Asst. Atty. Gen., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and SINGLETON and COATS, JJ.

## OPINION

COATS, Judge.

### ISSUES ON APPEAL

Peter Dana, a/k/a Peter Olsen,[1] was tried and convicted in Superior Court in Anchorage of the sale of one gram of cocaine in violation of A.S. 17.10.010.[2] He has preserved five points on appeal, contending that the trial court erred in 1) refusing to change the venue of his case to Talkeetna, where the offense occurred; 2) denying his motion to dismiss which he made because a prosecution witness, State Trooper Leo Brandlen, refused to submit to a pre-trial interview; 3) admitting a partially inaudible tape recording of the alleged drug sale to undercover officer Veda Kincheloe; 4) refusing to require production of undercover officer Kincheloe's personnel records; and 5) imposing an excessive sentence.

### FACTS OF THE CASE

In response to a request from Talkeetna-based State Trooper Fred Angleton, an undercover unit consisting of State Trooper Leo Brandlen, Investigator Edward Harter, and Specially Commissioned Officer Veda Kincheloe travelled to Talkeetna on March 10, 1978 to attempt a drug purchase from appellant Dana. Dana played the piano at a Talkeetna bar. Prior to entering the bar, Officer Kincheloe was fitted with a microphone and a transmitter that broadcast a signal received by Harter on a tape recorder. She entered separately from the other officers and sat down at the bar itself next to a friend of Dana's. Dana was at the piano. After approximately 45 minutes, Dana came over to speak to her.

The following facts are uncontested. Kincheloe wanted to buy cocaine, and Dana agreed to sell her some. The two went into the kitchen next to the bar and there Dana sold her a packet marked "Peruvian flake, one gram uncut", containing a white powdery substance, for $175. Kincheloe then left the bar. On several subsequent occasions she attempted to contact Dana by telephone but could not. On March 22, she and another undercover officer returned to Talkeetna to make another purchase, but Dana wouldn't sell her anything.

Dana's defense to the sale charge was that the transaction had been a joke. He testified that he had had several run-ins with Talkeetna Trooper Angleton, who had threatened to get him if he caught him selling drugs. Dana suggested to a friend that it would be fun to try to sell some inositol (a vitamin B complex powder, similar in appearance to cocaine) to an undercover officer. To effectuate the joke, Dana read about cocaine usage in a magazine, purchased drug paraphernalia, and packaged up a number of slips, similar to the one sold, all containing inositol. He then sold the inositol to Kincheloe, pretending it was cocaine.

Kincheloe's testimony was that Dana had 50 to 75 slips, similar to the one she purchased, on his person, all with various names printed on them. Dana snorted the contents of one of the slips in front of her. He told her that if she was interested in buying more, she should come back, or he would meet her in Anchorage. He told her that he had some LSD that she could try. She stayed in the bar for twenty minutes after the purchase, then left after the troopers departed. She drove out of town where she was met by the officers. She gave Trooper Brandlen the slip she had purchased, and he placed it in an evidence bag, sealed it, and initialed it. The contents of the slip were tested and found to be cocaine.

Defense witnesses testified that Dana had, prior to the sale, discussed the possibility of playing a joke on the officers and that

---

1. The name "Peter Dana" is a stage name the defendant ordinarily uses.

2. Sec. 17.10.010. Acts prohibited.
   It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense, give, barter, supply or distribute in any manner, or compound any narcotic drug except as authorized in this chapter.

he had had run-ins with Trooper Angleton. One witness testified that Dana had told him that Officer Kincheloe was a "narc". A jury found Dana guilty of sale of cocaine. He was sentenced to four years with two years suspended and a $1,000 fine. He appeals to this court from his conviction and the sentence.

## I. CHANGE OF VENUE

Before trial Dana filed a motion asking for a change of venue to Talkeetna. In his motion he asked for trial to be held in a community hall which was available in Talkeetna. He indicated that all his witnesses were from Talkeetna. The trial judge offered to conduct the trial in Palmer, which is in the same senate district as Talkeetna. Dana chose to have his trial in Anchorage instead of Palmer. While arguing the venue motion Dana asked for an evidentiary hearing to produce evidence that different social and cultural patterns existed in Talkeetna than existed in the state generally.

The trial judge said that he assumed Dana could show different cultural patterns in Talkeetna but denied the motion for an evidentiary hearing on this issue.

Dana contends on appeal that he was denied his right to an impartial jury under the Sixth Amendment to the United States Constitution[3] and Article I, sec. 11 of the Alaska Constitution[4] because of the alleged cultural and social differences between Talkeetna and either Anchorage or Palmer. He cites *Alvarado v. State*, 486 P.2d 891 (Alaska 1971).

A.S. 22.10.030[5] and Criminal Rule 18.1(a)[6] now govern motions to change venue. These provisions are directly aimed at avoiding the type of situation which gave rise to *Alvarado*. *See Alvarado v. State*, 486 P.2d at 905 & n. 40. Accordingly, when the trial court complies with the provisions of this statute and rule, a party requesting a change of venue based on *Alvarado* will have the affirmative burden of establishing

3. The Sixth Amendment to the United States Constitution reads as follows:

   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

4. Article I, Section 11 of the Alaska Constitution reads as follows:

   In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record. The accused is entitled to be informed of the nature and cause of the accusation; to be released on bail, except for capital offenses when the proof is evident or the presumption great; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

5. A.S. 22.10.030(c) and (d) read as follows:

   (c) All prosecutions for crimes and offenses shall be commenced in the judicial district in which the crime or offense was committed.

   (d) Subject to § 40 of this chapter, a trial and any precedent or antecedent hearings in an action shall be conducted in a senate district within the judicial district at a location which would best serve the convenience of the parties and witnesses. However, if there is any part of more than one senate district within the boundaries of a borough, the trial and related hearings shall be conducted within the borough's boundaries at a location which would best serve the convenience of the parties and witnesses. If the presiding judge of the district determines that there are no facilities, reasonably suited to the purpose, available for the trial or related hearings in the senate district specified in this subsection, he may direct the proceedings to be held in the nearest senate district with reasonably suitable facilities.

6. Alaska R.Crim.P. 18.1(a) reads in part:

   (a) Unless the convenience of the parties and witnesses or the change of venue provisions of A.S. 22.10.030(d) otherwise dictates, the trial shall take place in the urban center

   (1) nearest the place where the crime was committed, and

   (2) in the senate election district where the crime was committed, and

   (3) in which there are facilities available to house the court and jury and to conduct the trial or related hearings.

that systematic exclusion from the jury of a distinct group or class of persons will occur unless venue is changed.[7]

Here, there was no showing supporting Dana's contention that he could not obtain an impartial jury in Palmer. There was only Dana's general and conclusory assertion that he could call a witness who would testify that Talkeetna had social and cultural patterns different from the rest of the state. Although there is no reviewable evidence, due to the trial court's denial of Dana's motion for evidentiary hearing, under the circumstances of this case we conclude that such a denial was not improper.

We will not require the trial court to hold an evidentiary hearing on every claim raising the *Alvarado* issue. In order to be entitled to an evidentiary hearing, the moving party should at a minimum be prepared to make a clear and non-conclusory showing, by affidavit or other reliable offer of proof, that the party is capable of producing evidence which, if true, would require venue to be changed.[8] In this case, Dana gave no indication of what cultural and social distinctions he could show between residents of Talkeetna and residents of the State of Alaska generally. There was nothing offered to support a conclusion that any differences which might in fact be shown

would rise to the level of the profound racial and cultural differences underlying the decision of the court in *Alvarado*. Finally, though Dana offered to produce evidence that Talkeetna had social and cultural patterns different from the rest of the state generally, he did not offer to prove that selection of a jury in Palmer would result in the exclusion of jurors with these characteristics. Under *Alvarado*, Dana would not have been entitled to venue in Talkeetna as a matter of right without such proof. 486 P.2d at 904–905.

■ Dana's request for an evidentiary hearing on the *Alvarado* issue was thus unsupported by any realistic assurance that he could in fact make a showing warranting relief. Given the limited nature of the offer of proof in this case and the vague and conclusory manner in which it was stated, we hold that the trial court did not err in denying Dana's motion for an evidentiary hearing and in denying his motion to hold the trial in Talkeetna.[9]

## II. MOTION TO DISMISS

■ In another pretrial motion Dana moved to dismiss the charges because he was not able to conduct a pretrial interview with Trooper Brandlen. He asserts on appeal that the trial court erred in failing to

7. Cf. *Kimble v. State*, 539 P.2d 73, 79 (Alaska 1975); *Green v. State*, 462 P.2d 994, 996 (Alaska 1969), *cert. den.* 398 U.S. 910, 90 S.Ct. 1704, 26 L.Ed.2d 70 (1970).

8. See, e. g., *U. S. v. Fujimoto*, 102 F.Supp. 890, 895 (D.Hawaii 1952). See also *U. S. v. Irwin*, 612 F.2d 1182, 1187 & n. 14 (9th Cir. 1980); *U. S. v. Carrion*, 463 F.2d 704, 706 (9th Cir. 1972). Cf. Alaska R.Civ.P. 77(*1*).

9. In denying Dana's motion for an evidentiary hearing, the trial judge stated that he would assume that Dana was capable of making good his offer to prove the existence of differing social and cultural patterns in Talkeetna. Since, as we have indicated, proof of social and cultural differences between Talkeetna and the rest of the state would not in and of itself be sufficient to require a change of venue, the trial judge's assumption did not obviate the need for a sufficient, non-conclusory offer. We are moreover persuaded that the trial court's willingness to assume the truth of Dana's offer of proof did not curtail the offer or contribute to the vague and conclusory manner in which it

was made. The court's statement assuming the offer as true appears to have been made after Dana's counsel had made his offer of proof and completed argument on his request for an evidentiary hearing. In any event, the trial court's denial of the request for an evidentiary hearing did not preclude Dana from submitting appropriate affidavits to the court with a request for reconsideration. The only affidavit submitted by Dana with his motion to change venue is an affidavit of his attorney indicating that Dana and his trial witnesses were from Talkeetna and that trial could be held in the church community hall in that town. No effort has been made by Dana to supplement the record on appeal to reflect the specific nature of the evidence which he could have produced at an evidentiary hearing, and, at oral argument, Dana's counsel on appeal stated that he was not aware of what specific facts the originally offered testimony would have established or whether such testimony would be available if a retrial were ordered.

grant his motion to dismiss. This issue is without merit.

Dana had adequate discovery. His counsel had previously cross-examined Trooper Brandlen at a preliminary hearing, and the prosecutor provided Dana's counsel with police reports. Dana claimed in his motion to dismiss that the prosecutor had interfered with his access to Trooper Brandlen by telling Brandlen not to talk to Dana's counsel or investigator in violation of Criminal Rule 16(d)(1).[10] However, Trooper Brandlen testified that he did not want to talk to the defense counsel, and that no one had suggested to him not to talk to the defense counsel. Rather than grant the motion to dismiss, the trial judge did two things. First, he ruled that Trooper Brandlen could not testify to anything which was not in the police reports.[11] Second, the trial judge indicated that he would allow a deposition of Trooper Brandlen if Dana made a proper showing,[12] but Dana never asked for a deposition. We hold the record is sufficient to support the trial court's finding that there was no violation of Criminal Rule 16(d)(1). We further hold that the trial court did not abuse its discretion in regulating discovery the way it did.

## III. THE TAPE RECORDING

Dana argues that the trial judge should have excluded a tape recording of the conversation between him and Veda Kincheloe which was made at the time of the alleged drug sale. The tape is of poor quality and has significant gaps where the equipment failed and the conversation between Dana and Kincheloe cannot be heard. However, it is clear the conversation involves a drug transaction.

The trial court ruled that Dana waived any objection which he had to the tape because his counsel had been given the tape before the omnibus hearing and made no objection to the tape at that time. Dana argues that this is an evidentiary issue which can be raised initially at trial. He argues that since the tape is of such poor quality and since exculpatory statements which he allegedly made were not on the tape, the tape was misleading and should not have been allowed.

We hold that the tape was admissible and do not need to reach the issue of whether Dana waived this issue by not raising it at the omnibus hearing. Prior decisions of the Supreme Court of Alaska have approved playing tapes at trial. In *Bentley v. State*, 397 P.2d 976, 978–9 (Alaska 1965) the court ruled that it was error to exclude a tape recording offered by the defendant. The recording in *Bentley* was of a key prosecution witness and was offered to impeach her trial testimony. The court ruled it was error to exclude the tape recording even though the recording was not of the whole conversation:

> It is true that from reading the transcript of the recording it appears that it contained only a part of the conversation between appellant and Mrs. Fambrough. But that doesn't mean it should be excluded. This is merely another factor for the jury to consider in considering the impeaching weight and significance of the recording.

In *Hampton v. State*, 569 P.2d 138, 145–46 (Alaska 1977), *appeal dismissed*, 434 U.S. 1956, 98 S.Ct. 1225, 55 L.Ed.2d 757, the supreme court ruled it was proper to admit a tape of a defendant's confession. The

---

**10.** Alaska R.Crim.P. 16(d)(1) reads as follows:

Except as is otherwise provided as to matters not subject to disclosure and protective orders, neither counsel for the parties nor *other prosecution or defense personnel* shall advise persons (except the accused) having relevant material or information to refrain from discussing the case with opposing counsel or showing opposing counsel any relevant material, nor shall they otherwise impede opposing counsel's investigation of the case.

**11.** Dana did not object at trial to any of Trooper Brandlen's testimony on the ground it was not contained in the police reports.

**12.** Alaska R.Crim.P. 15(a) reads in part:

(a) Upon order of the court for good cause shown, the testimony of a prospective witness may be taken by either party for discovery upon notice and after the deposing party has disclosed all statements, exhibits, and witness lists required by Rule 16. . . .

tape in *Hampton* was of an interview which took approximately forty-five minutes to an hour. The tape was only fifteen minutes long because the officer only recorded the answers to questions the defendant could answer. If the defendant did not understand the question, the officer reversed the tape and asked another question. In this way, many of the questions and pauses were not on the tape, although all of the answers were on the tape. Hampton objected that since his defense was diminished capacity, the pauses and his inability to understand questions were significant. The court cited *Bentley* in approving the trial judge's decision to admit the tape into evidence. The court said:

> Our review of the record has led us to the conclusion that the trial court's admission of the taped confession did not constitute error. Here the jury was fully apprised of the fact that Hampton did not respond immediately and that he had had trouble formulating answers at times. Since the jury was made aware of the fact that the questions and answers did not proceed as they appear on the tape, we hold that the superior court did not err in admitting the tape into evidence.

In *Quick v. State*, 599 P.2d 712, 721 (Alaska 1979) the court allowed a tape recording of a confession to be played even though the tape recorder was turned off for brief periods during the interview. The court held:

> The general rule is that a recording is admissible unless the omissions are so substantial as to render the recording untrustworthy. (footnote omitted).

Applying these standards, it is clear the court should have admitted the tape recording into evidence unless the prejudicial impact of the tape would outweigh its probative value.[13] Normally this determination is a question for the trial court. However,

in this case it is clear the probative value of the evidence outweighed any prejudicial impact.

■ Dana's defense was that as a joke he sold a vitamin B complex powder which resembled cocaine to Officer Kincheloe. He testified that the recording of the conversation about the alleged drug sale played at trial was accurate, but that there were several significant statements which were not recorded because of the tape recorder's malfunctioning. Dana testified that during his conversation with Kincheloe he told her he knew she was an undercover officer and knew she was wired for sound. He testified that this part of their conversation was not on the tape. Dana was therefore able to present his version of the taped conversation for the jury's evaluation. He has not shown any way in which he was unfairly prejudiced in presenting his defense by admission of the tape. Since Dana has not shown how he was unfairly prejudiced by the admission of the tape, we conclude the trial court properly admitted the evidence.

### IV. DISCOVERY OF KINCHELOE'S PERSONNEL FILE

Dana also argues that the trial court erred in not allowing him to examine Officer Kincheloe's personnel records. This request for the personnel file came during the trial testimony of Trooper Edward Harter. Trooper Harter testified that he recommended Veda Kincheloe for a special commission. He testified to tests which a person must pass and recommendations which a person must have to obtain a special commission. The results of these tests, the recommendations, and other papers were in Veda Kincheloe's personnel file, and Trooper Harter testified that he reviewed her file in deciding to recommend her for a special commission. At the conclusion of this testi-

---

13. *See* Alaska R.Evid. 403, which reads as follows:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or

needless presentation of cumulative evidence.

Rule 403 was not in effect at the time of the trial in this case. However, Rule 403 only makes explicit the common law power of the court and is not a change in the law. *See* Alaska R.Evid. Commentary 403 at 69.

mony, Dana's trial counsel requested disclosure of Veda Kincheloe's personnel file. The trial judge ruled that the request for the personnel file was not timely and that the defendant had not made a sufficient showing of his need to obtain the file. Dana contended that he could not have made any showing of necessity to obtain the file before trial, arguing that it became relevant because Trooper Harter testified he looked at the file in deciding to give Kincheloe a special commission, and that background material on Kincheloe was available in the file. On appeal Dana also contends that the file was relevant to determine any possible bias, prejudice, or other exculpatory material which would reflect on the credibility of Officer Kincheloe or Trooper Harter.

We agree with the trial court that the defendant's request was not timely and that he made an insufficient showing of his need for the file. The request was made in the middle of trial. Trooper Harter testified that Officer Kincheloe's file was probably located in Juneau; trial was held in Anchorage. Furthermore, counsel for Dana made no showing of any necessity for discovery of the file.

We find the reasoning in *People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924 (N.Y.1980), to be helpful in this case. The court recognized a conflict between the right of the defendant to confront and cross-examine witnesses and the police department's right to have confidential records. 423 N.Y.S.2d at 896, 399 N.E.2d at 927. The court realized that in the conflict between these two rights, the constitutional right to confront and cross-examine witnesses must have priority. The court ruled that:

> [I]n striking the balance between the two, police confidentiality must always yield to the demands of a defendant in a criminal case. The circumstances which support such demands may vary greatly.

And, though access must be afforded to otherwise confidential data relevant and material to the determination of guilt or innocence, as, for example, when a request for access is directed toward revealing specific "biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand," or when it involves other information which, if known to the trier of fact, could very well affect the outcome of the trial, there is no such compulsion when requests to examine records are motivated by nothing more than impeachment of witnesses' general credibility. In such cases, the defendant's rights have generally been canalized within the bounds of the traditional evidentiary rule that governs the introduction of extrinsic proof of matters collateral to the issues at trial, i. e., its availability rests largely on the exercise of a sound discretion by the trial court. (citations omitted).

423 N.Y.S.2d at 896, 399 N.E.2d at 927.

The court went on to say:

> [A]ccess [to personnel files] has been denied in cases in which the defendant failed to demonstrate any theory of relevancy and materiality, but, instead, merely desired the opportunity for an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable him to impeach the witness. (citations omitted).

██ Counsel for Dana simply did not make any showing that the material he wanted from the personnel file would be more than a fishing expedition for unspecified material for impeachment. This is not a sufficient showing to require the trial court to locate the personnel file in the middle of trial, review it *in camera,* and determine if any information had relevance.[14]

---

14. We note that this case does not involve a situation where Veda Kincheloe's version of the facts was diametrically opposed to Peter Dana's. In this case both Kincheloe and Dana agreed a sale took place. Dana's version was that he sold Kincheloe inositol. Dana's counsel never made it clear how he was going to impeach Kincheloe or what his theory of impeachment would be. These factors lead us to uphold the trial court's decision not to delay

## V. SENTENCE

■ The trial judge sentenced Dana to four years with two years suspended and ordered him to pay a $1,000 fine. This is a substantial sentence for the sale of a small quantity of cocaine and it is toward the upper range of what we would uphold for a person such as Dana with a relatively clean record.[15] However, the evidence showed that Dana had fifty to seventy-five slips similar to the one he sold to Kincheloe. Dana also told Kincheloe he had been in business a long time and had brought the cocaine in himself from Colombia. Given this background we do not find the trial court was clearly mistaken in imposing this sentence. *LeDuff and Thornton v. State*, 618 P.2d 557 (Alaska 1980); *Elliott v. State*, 590 P.2d 881 (Alaska 1979).

Affirmed.

---

the trial to hold an *in camera* inspection of the file.

15. According to the presentence report Dana was convicted in 1951 of vagrancy and in 1953 received a suspended sentence for non-sufficient fund checks. The court did not mention these charges at sentencing. It seems appropriate to give these charges no importance because of their age and minor nature.