**Earl W. ERICK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5253.**

Court of Appeals of Alaska.

March 25, 1982.

G. Blair McCune, Cowper & Madson, Fairbanks, for appellant.

Paul E. Olson, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Earl Erick appeals his conviction for assault with intent to kill, wound, or maim.[1] The single issue in this appeal concerns whether or not the jury selection methods used deprived the defendant of his right to an impartial jury of twelve in the district where the crime occurred. We reverse Erick's conviction.

Earl Erick was accused of shooting Patrick Kelly with intent to kill, wound, or maim him on July 21, 1979, in Fort Yukon. Kelly resided in Fort Yukon, while Erick is from the outlying village of Venetie, although he lived and worked in Fort Yukon at various times.

Approximately two weeks before Erick's trial, scheduled for November 19, 1979, the Fort Yukon magistrate sent a summons to each of the sixty-nine Fort Yukon residents on her list of eligible jurors.[2] Because the trial was expected to last longer than one day and Fort Yukon lacked adequate accommodations for villagers forced to stay overnight,[3] the magistrate did not summon any of the twenty listed potential jurors from the surrounding villages.[4] Villagers were summoned for possible jury service in three misdemeanor trials scheduled to start the day after Erick's trial began.

On the morning of the trial, forty-nine potential jurors showed up at the courthouse. After approximately thirty-eight potential jurors had been examined, only fourteen had been passed for cause. Court

1.  Former AS 11.15.150 reads as follows:
    *Shooting, stabbing or cutting with intent to kill, wound or maim.* A person who maliciously shoots, stabs, cuts, or shoots at another person with intent to kill, wound, or maim him is punishable by imprisonment in the penitentiary for not more than 20 years nor less than one year.

2.  Understanding the source of this list of 69 requires some background on the Alaska jury system in general. Master lists of potential jurors in each area are compiled annually in Anchorage from lists of registered voters, resident hunting and fishing licenses issued, and income tax records. Local magistrates and jury clerks may request any number of names to fill local needs. The Anchorage office then selects that number of names at random and sends a juror questionnaire to each person drawn. The completed questionnaires are returned to the local court. Some questionnaires cannot be delivered, some people do not return their questionnaires, and some people are excused from jury duty, either permanently or temporarily, based on their responses. The yield of potential jurors is thus apt to be substantially smaller than the number of questionnaires mailed.
    The Fort Yukon master list includes people from Fort Yukon and four surrounding villages within 50 miles of Fort Yukon: Beaver, Chalky-

itsik, Circle, and Venetie. In 1978 and 1979, 57–60% of the people listed resided in Fort Yukon. The Fort Yukon magistrate who preceded this magistrate requested 300 names on March 23, 1979. Of the 179 people who returned their questionnaires, 90 were excused, leaving 89 who qualified for jury duty. Twenty on the final list were villagers who were not initially summoned for the Erick trial. That left the 69 people who were summoned for Erick's trial. The Fort Yukon magistrate testified that in November of 1979 she believed that the list of 89 people from Fort Yukon and the villages represented the only jurors available. This was an error. See discussion *infra* at 824.

3.  Extensive testimony was taken on the problem of accommodating villagers called for jury duty.

4.  It is not clear from the record who made the decision not to summon villagers for Erick's trial. The Fort Yukon court clerk testified that the magistrate had received a telephone call instructing her not to use the villagers. The magistrate stated, "[I]t was suggested that I use local people for this particular trial." She denied there was a policy not to use village people for trials lasting more than one day.

and counsel realized it was doubtful that a jury of twelve would remain after voir dire was completed and all peremptory challenges had been exercised. The trial judge, Judge Taylor, proposed continuing the trial for one week to permit the villagers summoned for the misdemeanor trials to be summoned for this case as a supplemental venire. This plan was adopted.[5]

On November 20, the Fort Yukon magistrate personally served all of the villagers (seven or eight) who were present at the courthouse for possible jury duty in the misdemeanor cases, instructing them to return on Monday, November 26. On Friday, November 23, summonses were mailed to the other villagers on the jury list, and the magistrate made some additional effort to contact these people and to arrange for transportation for all summoned villagers into Fort Yukon for November 26. On November 26, five or six potential jurors from the villages reported to court. Voir dire was completed on the villagers and on the Fort Yukon residents who returned from a week earlier, and the panel was soon reduced to eleven jurors with peremptory challenges still to be exercised.

Judge Taylor then proposed three alternative courses of action: 1) to hold the trial in Fort Yukon with however many jurors remained after the final peremptory challenges; 2) to move the jurors selected after peremptory challenges to Fairbanks and to supplement the venire with Fairbanks jurors to obtain a jury of twelve; or 3) to continue the case for thirty days to permit the court system to obtain additional jurors. Through counsel, Erick stated a preference for the third alternative. The state's attorney preferred the first or second, partly because he was not sure he would be available to try the case in thirty days. The court

ruled that it would adopt the second alternative. The final peremptory challenges were then exercised on the prospective jurors who had not been excused for cause. Seven jurors remained. After a brief recess, the defendant stipulated to trial in Fort Yukon by the seven impaneled jurors, reserving his right to appeal the jury issues.

Following trial, Erick was convicted. He gave notice of his appeal and in December, 1980, this court ordered the case remanded for further fact finding concerning what efforts were made to provide Erick with a jury of twelve from the Fort Yukon area and whether those efforts were reasonable. The trial court held an evidentiary hearing and concluded, in a memorandum decision, that reasonable efforts had been made to provide the defendant with a jury of twelve from the Fort Yukon area and that it was not reasonable, in light of all the circumstances, to continue the case or take other steps to provide the defendant with such a jury.

A discussion of a defendant's right to an impartial jury from the area where the crime occurred must start with *Alvarado v. State*, 486 P.2d 891 (Alaska 1971). In *Alvarado*, a native defendant who was a resident of Chignik was charged with a rape allegedly committed in Chignik. He was tried over his objections in Anchorage by a jury which was selected from within fifteen miles of Anchorage. In reversing Alvarado's conviction, the court emphasized the difference between Chignik, a remote native village approximately 450 miles from Anchorage, and the city of Anchorage. The court held that Alvarado was not provided with an impartial jury.[6] The court said, "[W]e ... hold ... that an individual should not be forced, against his will, to

---

5. Erick raised Criminal Rule 45 objections to a continuance at that stage of his trial, but he has not pursued this point on appeal.

6. The holding is based on art. 1, § 11 of the Alaska Constitution which, in pertinent part, reads as follows:

In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury of twelve, except

that the legislature may provide for a jury of not more than twelve nor less than six in courts not of record.

In addition, the court concluded that the failure to provide Alvarado with an impartial jury denied him his constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution. *Alvarado v. State*, 486 P.2d at 899.

stand trial before a jury which has been selected in such a manner as to exclude a significant element of the population of the community in which the crime was allegedly committed." *Alvarado v. State*, 486 P.2d at 905. AS 22.10.030[7] and Criminal Rule 18.1[8] govern motions to change venue. These provisions are aimed at avoiding the problems which gave rise to *Alvarado. Dana v. State*, 623 P.2d 348, 351 (Alaska App. 1981). A major reason for these provisions is to guarantee that a defendant will be tried by a jury which is representative of the area in which the crime allegedly occurred. The parties to this case agree that Erick's jury should have been selected from the area of Fort Yukon, if possible. Under Criminal Rule 18.1, Erick had a right to expect his jury to be drawn from the Fort Yukon area unless the court was unable to provide him with a jury from that area with reasonable effort.

In deciding whether the efforts of the trial court were reasonable in this case, we are influenced by the fact that Erick's case presents the classic *Alvarado* situation of an Alaskan native from a small native town requesting his right to be tried by a jury which is representative of the area where he is from and where the crime allegedly occurred. As such, this is a particularly compelling case to require the trial court to use diligent efforts to obtain a jury of twelve which is representative of the area. We appreciate the difficulties of obtaining a jury in communities such as Fort Yukon, where the record indicates that potential jurors are frequently related to or friends of parties, and where many of the potential jurors will have information about a case which disqualifies them as jurors. We also appreciate that there are frequently severe problems of communication, transportation, and availability of suitable facilities which make it difficult to hold a jury trial in such an area. The record shows that all of these problems were present in Erick's case. However, these problems are typical of the problems which result from the attempts of the court system to comply with the mandate of *Alvarado* that "[j]ustice must be made available to all the people of Alaska." *Alvarado v. State*, 486 P.2d at 906. We believe that the policies of *Alvarado* dictate that we place the burden upon the state to show that it was not reasonable to obtain a jury of twelve from the Fort Yukon area once that area had been selected as the site of the trial.

We do not believe that this record demonstrates that the state has met this burden. The greatest defect which we see in reviewing the record is that the magistrate and court clerk, who had only recently assumed their duties and had not been trained in jury selection procedures, believed that the list of eighty-nine potential jurors from the Fort Yukon area was the only list of available jurors. However, this was not the only available list of jurors. After a remand of this case, Merle Martin, Manager of Technical Operations for the Alaska Court System,

7. AS 22.10.030(c) and (d) read as follows:
    (c) All prosecutions for crimes and offenses shall be commenced in the judicial district in which the crime or offense was committed.
    (d) Subject to § 40 of this chapter, a trial and any precedent or antecedent hearings in an action shall be conducted in a senate district within the judicial district at a location which would best serve the convenience of the parties and witnesses. However, if there is any part of more than one senate district within the boundaries of a borough, the trial and related hearings shall be conducted within the borough's boundaries at a location which would best serve the convenience of the parties and witnesses. If the presiding judge of the district determines that there are no facilities, reasonably suited to the purpose, available for the trial or related hearings in the senate district specified in this subsection, he may direct the proceedings to be held in the nearest senate district with reasonably suitable facilities.

8. Alaska R.Crim.P. 18.1(a) reads in part:
    (a) Unless the convenience of the parties and witnesses or the change of venue provisions of AS 22.10.030(d) otherwise dictates, the trial shall take place in the urban center
    (1) nearest the place where the crime was committed, and
    (2) in the senate election district where the crime was committed, and
    (3) in which there are facilities to house the court and jury and to conduct the trial or related hearings.

testified at the evidentiary hearing that the master jury list for the Fort Yukon area, with 842 names, had not been used at all. He said that he could conservatively estimate that 437 of the people on this list were eligible for jury selection in November 1979, including 234 from the town of Fort Yukon. Martin also testified that he could have a list of any number of these names and addresses, up to the maximum, available within approximately two hours after he received a phone call.[9]

The trial court and the parties likewise were apparently unaware that the names of many more potential jurors were available on short notice through the availability of the master jury list. When Erick's counsel inquired about the possibility of the availability of more jurors during jury selection on November 26, the magistrate indicated the only possible jurors who could be selected for the entire year were the ones on the jury list that she had. Neither the court nor either of the parties challenged this assertion, although Erick's counsel obviously suspected that more jurors should be available in an area the size of the Fort Yukon area.

■ We believe that the trial court must have a great deal of discretion in determining what efforts are reasonable under different circumstances to attempt to obtain a jury in an outlying area. There are too many factors involved for us to set a definite rule as to what effort is sufficient. However, where the record is clear that the trial court has weighed the different possibilities for supplementing a jury and made a reasonable, diligent attempt to obtain a jury, we will uphold the efforts of the trial court. Once Fort Yukon was selected as the site of the trial, the court system had the duty to make sure that a jury was selected from that area if possible. One responsibility of the court system is to make sure that those who are charged with obtaining a jury panel are aware of all their available options. The record in this case demonstrates a breakdown in communicating all of the available options to the people involved in the jury selection process.

■ The trial court, in its findings after the remand, apparently concedes that no one was aware that the names of additional jurors were readily available from the master jury list. The availability of this list presents the court with so many possible options for obtaining a jury that we cannot find that the efforts to obtain a jury were reasonable. The fact that the court personnel were unaware that more jurors might be available on the master list raises a question whether more jurors would have been summoned had they known of the list. The record reflects that both the defendant, Earl Erick, and the alleged victim, Patrick Kelly, were from the Fort Yukon area. All the initial jurors summoned were from the town of Fort Yukon. The record further reflects that Fort Yukon is a small, predominately native town where many people are related and where the availability of information about the events surrounding an arrest or trial would result in many people being excused for cause. It is not surprising that the court encountered difficulty in obtaining a jury. It is impossible for us to say whether the court personnel could have anticipated this and, had they been aware of the availability of more jurors, whether more jurors would have been summoned initially. However, where the option to consider calling more jurors initially could not have been considered because this option was not known, a serious

9. We do not want to understate the difficulty of using names obtained in this way. To use these names and addresses on an expedited basis, it would be necessary to attempt to contact the jurors without using the standard jury questionnaire which, among other things, helps to determine whether a potential juror is eligible for jury service. Martin conservatively estimated that of the 842 names, 437 would be eligible for jury service. His estimate eliminated those who had been summoned in the last year, those permanently excused, and those who were listed twice. In addition, many of these people on the list would have moved, many would be difficult to contact on short notice, and others would refuse to cooperate, particularly with little advance notice. *See Calantas v. State*, 599 P.2d 147, 149 (Alaska 1979).

question is raised concerning the sufficiency of the effort to obtain a jury.

Since the court was not aware that the names of additional jurors were available on short notice, the court could not consider the option of attempting to contact more jurors between November 19 and November 26. Given the difficulty which the court was having obtaining a jury for Erick on November 19, it seems probable that the court, had it known of the existence of the names of other potential jurors, would have attempted to summon in more than the twenty additional jurors. These same jurors were summoned to be in Fort Yukon on November 20 for misdemeanor trials. Even though summonses had been sent out two weeks before, these twenty names yielded only seven or eight potential jurors on November 20. The court certainly should have known on November 20 that it was unlikely that the potential jurors summoned from the villages would supply a sufficient number of potential jurors to allow a full jury panel to be selected in Erick's case on November 26. At this point, if not before, the court should have considered obtaining a list of additional jurors and attempting to contact them. However, this course of action was not considered since no one was aware of the possibility of obtaining the names of additional jurors on an emergency basis. The fact that this course of action was not considered makes it difficult for us to conclude that everything reasonably possible was done to obtain a jury for Erick.

In analyzing the attempts which were made to obtain a jury for Erick, we note that the Alaska Supreme Court, on August 31, 1979, shortly before Erick's case, decided *Calantas v. State*, 599 P.2d 147 (Alaska 1979). In that case the court approved an emergency method of obtaining extra jurors where it was apparent that too few jurors would be available for a trial in Kodiak. Three hundred names were obtained from the master list in Anchorage on an emergency basis. Apparently because people outside of Kodiak would be difficult to contact on short notice, court personnel first eliminated approximately 100 jurors outside of Kodiak from this list. The court personnel then phoned all the prospective jurors on the list whose names appeared in the Kodiak telephone book. This was a group of eighty prospective jurors. Using this method, fourteen prospective jurors were obtained for trial. These, combined with twenty-one jurors selected by more conventional methods, made up the panel from which Calantas' jury was selected. *Id.* at 149. The court held that Calantas' jury was secured from a fair cross section of the community. *Id.* at 150.

There are certainly a number of methods that the trial court, in its discretion, could have used to obtain a jury. However, it appears to us that one reasonable way to proceed would have been to attempt to contact additional jurors in the manner approved of in *Calantas*.[10] Had the court attempted to obtain additional jurors in this manner from the master list and if the court was still unable to obtain a jury, we would be inclined on this record to hold that the court made a reasonable effort to obtain a jury in the Fort Yukon area for Erick. We would also be inclined to uphold the trial court's decision to give Erick the choice to have his case tried before a jury of seven selected from the Fort Yukon area, or

10. We are aware that the defendant objected that the original panel of jurors which was summoned for November 19 only contained jurors from Fort Yukon. It is possible that Erick would have objected to supplementing the panel by the methods used in *Calantas* because those methods would have resulted in more jurors from the town of Fort Yukon than from the outlying areas around Fort Yukon. We do not know whether Erick would have objected to this procedure or what grounds he would have raised because he never had this option presented to him. Obviously we cannot rule in such a vacuum on the merits of any objection which might have been made to using *Calantas* methods in Fort Yukon. However, on the record before us it appears that the *Calantas* methods were appropriate in this case and would be approved. *Vail v. State*, 599 P.2d 1371, 1377–78 (Alaska 1979); *Calantas v. State*, 599 P.2d at 149–50. The *Calantas* method should have been considered and probably tried. If the defendant objected to the procedure, this would certainly weigh against his argument that the court had not used reasonable efforts to obtain a jury for him.

before a jury of twelve with the jury panel supplemented from the Fairbanks area.[11] Since we find that we cannot agree that the trial court did reasonably attempt to secure a jury for Erick from the Fort Yukon area, we REVERSE Erick's conviction.[12]

SINGLETON, J., dissents.

SINGLETON, Judge, dissenting.

The majority holds that court system negligence,[1] i.e., a failure to exercise due care in summoning for trial in a remote village a jury panel sufficiently numerous to ensure that a jury of twelve persons would be selected (despite a predictably large number of challenges for cause and the standard large number of available peremptory challenges), invalidates a subsequent trial where the defendant waives a jury of twelve and proceeds to trial with a jury of seven persons chosen from the area in which the crime occurred. The majority relies upon Alvarado v. State, 486 P.2d 891,

905 (Alaska 1971), AS 22.10.030, and Criminal Rule 18.1. I believe this reliance is misplaced for two reasons. First, the case, the statute, and the criminal rule deal primarily with the location of trial. Here, the place of trial was scheduled for Fort Yukon and the parties stipulated to shift it to Fairbanks. It is clear that the stipulation was reached prior to any difficulties arising with regard to the adequacy of the jury panel. Thus, defendant cannot complain about the place of trial. In any event, the stipulation was rescinded and the case was tried in Fort Yukon. Second, to the extent that Alvarado, the statute and the rule relate to jury selection at all, they seek to obtain a jury of residents from the vicinity in which the crime occurred. Here, all seven members of the jury which convicted Erick were drawn from the vicinity, and Erick makes no specific objection to any member of that jury. Thus, I conclude this decision cannot rest on Alvarado and the statute and rule enacted to implement it.

11. Assuming reasonable efforts were made to select a jury for Erick and those efforts failed, we do not believe that the trial court would be precluded from requiring Erick to choose between a trial in front of the seven jurors selected from Fort Yukon or having the seven Fort Yukon jurors supplemented from Fairbanks. (We note that the record in this case does not reflect any choices for supplementing the jury panel other than from Fairbanks, assuming that it was not reasonable to attempt to get more jurors from the Fort Yukon area.) In the case before us, seven jurors were selected from the Fort Yukon area, and there has been no showing that those jurors do not represent an adequate cross section of that area. The burden is on the defendant to show that a "distinctive" or "cognizable" group has been systematically excluded in the jury selection process. Tugatuk v. State, 626 P.2d 95, 100–01 (Alaska 1981); Dana v. State, 623 P.2d 348, 351–52 (Alaska App. 1981). The defendant had a choice between a jury of twelve which would have had substantial representation from the Fort Yukon area or a jury of seven which was composed entirely from the Fort Yukon area. Assuming that reasonable efforts had been made to obtain a jury from the Fort Yukon area, we believe that it is clear that neither jury would "exclude a significant element of the population of the community in which the crime was committed." Alvarado v. State, 486 P.2d at 905. Assuming the court had made a reasonable effort to obtain a jury in Fort Yukon, we believe it was proper to allow the defendant to elect between a jury of seven Fort

Yukon jurors or having the jury supplemented from Fairbanks. This system gives the defendant a maximum choice. Assuming the record reflects a voluntary waiver of a jury of twelve in this situation, we would be inclined to decide that there was no violation of the provisions of art. 1, § 11 of the Alaska Constitution which entitles the defendant to a jury of twelve.

12. Our decision is based on our belief that the trial court's failure to use reasonable efforts to obtain a jury from the Fort Yukon area was a violation of AS 22.10.030(c) and (d) and Alaska R.Crim.P. 18.1. Where the statutes and rules involving jury selection are involved, failure to substantially comply with procedures which prejudices the rights of a party is reversible error. AS 09.20.040; Vail v. State, 599 P.2d at 1378.

1. While I cannot place responsibility on a specific court employee, I accept arguendo with some hesitancy (since the issue is one of fact and the trial court's findings are to the contrary) the majority's conclusion that the breakdown in communications between the court system's central staff and its agents in the field constituted negligence which prejudiced Erick. Compare Zerbe v. State, 578 P.2d 597 (Alaska 1978). I assume, under the circumstances, the test of prejudice requires a lesser showing than would be required for a finding of proximate cause in a civil case. Compare Maddocks v. Bennett, 456 P.2d 453, 459–61 (Alaska 1969).

Further, even if we assume that the statute and rule do relate to jury selection, then they would be *in para materia* with, and I suggest governed by, AS 9.20.040 which requires only substantial compliance and not a freedom from negligence in jury selection procedures. *See Tugatuk v. State,* 626 P.2d 95, 98–99 (Alaska 1981).

AS 9.20.040 was originally enacted as part of the 1917 Alaska Session Laws, ch. 59, § 3, *see Hauptman v. United States,* 43 F.2d 86, 88 (9th Cir. 1930), and was codified as § 55–7–31 ACLA 1949.[2] It required strict compliance on pain of reversal. The ninth circuit refused to literally follow it in either *Hauptman* or the later case of *Hollman v. Brady,* 233 F.2d 877 (9th Cir. 1956). In *Hauptman,* the court established a rule which required a failure of substantial compliance with the jury selection procedures amounting to bad faith and substantial prejudice to the defendant before it would reverse. Mere negligence was not enough. *Hauptman v. United States,* 43 F.2d at 89. These requirements, (1) failure of substantial compliance, and (2) resulting prejudice, were incorporated into the act in the 1962 codification, indicating legislative approval of the ninth circuit's interpretation of the predecessor statute. *See* AS 9.20.040. Given this history of AS 9.20.040, mere negligence by court clerical personnel in the jury selection procedure cannot warrant a reversal.

Finally, while the question is close, I do not believe that this record requires a finding that Erick's waiver of a jury of twelve was invalid because it was not knowing, intelligent, and voluntary. *See Walker v. State,* 578 P.2d 1388, 1390 (Alaska 1978). While Erick clearly went through the motions of a personal waiver, I recognize that he may have done so faced with the kind of

Hobson's choice condemned in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and *Whitus v. Balkcom,* 333 F.2d 496 (5th Cir. 1964), *cert. denied,* 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964). While mere negligence by the court system employees in failing to produce an adequate panel would not, in my opinion, violate AS 9.20.040, it might invalidate a consent to proceed with a jury of less than twelve in a felony criminal proceeding. This issue, however, was not raised below at the time of the purported waiver, and despite a remand for an evidentiary hearing, was not brought to the trial court's attention thereafter. Finally, it has not been argued in this court.

---

2. Section 55–7–31 provides:

Compliance with Statute. No case, either civil or criminal, shall be tried in any of the Courts of the Territory of Alaska, except in accordance with the provisions of this Act, and any violation of the provisions of this Act is hereby declared to be reversible. Provided, however, that in any civil or criminal case, by consent and agreement of the parties given in person and by and through their attorneys, and made in writing and signed and filed in the case, a jury shall be drawn or selected in any manner upon which the parties may so agree, and such jury, so drawn and selected under appropriate order of the Court made in conformity with such agreement, shall be deemed a legal jury, and such drawing or selection shall not be deemed a violation of this Act.