Shirley LaLONDE a/k/a Monique Fontaine, Appellant,

v.

STATE of Alaska, Appellee.

No. 4543.

Supreme Court of Alaska.

July 25, 1980.

David C. Backstrom, Deputy Public Defender, Fairbanks, and Brian Shortell, Public Defender, Anchorage, for appellant.

Steven J. Call, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER, BURKE and MATTHEWS, JJ.

RABINOWITZ, Chief Justice.

In this appeal Shirley LaLonde seeks reversal of her jury conviction for second degree murder. She also appeals from the superior court's sentence of twenty years on the ground that it is excessive.

LaLonde shot her ex-lover, Dennis Yenter, in the back with a .38 caliber handgun at the Gold Rush Saloon in Fairbanks. The shooting, which LaLonde claimed was accidental, was witnessed by several people in the saloon. Yenter was pronounced dead on arrival at the Fairbanks hospital.

LaLonde started dating Yenter in March, 1977. Three or four weeks later, they began living together. LaLonde and Yenter had a stormy relationship. According to LaLonde, they fought frequently, and by October things were so bad between them that she moved out and went to visit her relatives. She returned about four weeks later, when Yenter promised to cut down on his drinking and to stop battering her. Soon, however, the fights began again, and Yenter started to tell LaLonde how he would kill her friend Jerry Youhas, of whom Yenter was jealous. On one occasion in February or early March, 1978, Yenter broke LaLonde's nose. She moved out for the second time less than a week later, because she said that she had become too afraid of Yenter to continue living with him.

On the evening of March 24, Yenter sent word to LaLonde that his daughter was in town and that he would like to introduce her to LaLonde. LaLonde testified that the meeting at the Gold Rush was friendly. After LaLonde had left the Gold Rush and had gone to another bar, she met a mechanic, whose name she could not recall, who told her that a few days earlier Yenter, when drunk, had again threatened to kill Youhas, and had also mentioned including her. This news, LaLonde said, upset her greatly. She later ran into Yenter, his daughter and Barbara Jo Soper, whom Yenter dated, at the Polaris Lounge. According to Soper, when they were leaving, LaLonde, who had been glaring at them, grabbed Yenter and began yelling at him. Soper heard LaLonde mention Soper's name.

Eventually LaLonde returned to the Gold Rush,[1] where Yenter's group had gone. She sat down in a section on the other side of Yenter, and remained there for a while, except for a couple of trips to the bathroom. At one point, Yenter offered to buy her a drink, but she refused. Yenter was shot while LaLonde stood behind him. She testified that she had taken out her gun to emphasize what she was going to say to Yenter, and that it went off by accident. Witnesses said that LaLonde bore what one described as a "determined smile." Several people present quickly grabbed LaLonde.

At her trial, LaLonde took the stand and set forth her accident explanation.[2] After

---

1. LaLonde had been drinking heavily throughout the evening, and claims to have been very drunk by the time she returned to the Gold Rush.

2. LaLonde claimed that she had been carrying the gun for self-protection since she broke up

the close of evidence, while instructions were being discussed, the following colloquy took place.

THE COURT: What about voluntary manslaughter, Mr. Stewart? I didn't see very much evidence on it.

MR. STEWART [LaLonde's attorney]: No, but I think there's evidence of involuntary manslaughter, though.

THE COURT: Well, we didn't get to that yet. I have no strong feelings as to whether it should be given or it shouldn't be given. What do counsel—Mr. Call—there is evidence of involuntary manslaughter, based on her testimony, if they believe her. But voluntary manslaughter, I'm not so sure there's any evidence. But I don't have any objection to giving the instruction if neither counsel objects. If one of them doesn't want it, I'm not going to give it.

MR. STEWART: I don't object to it.[3] The prosecution, however, did object. Accordingly, no "heat of passion" instruction was given.[4] Although the jury convicted LaLonde of second degree murder, the jury foreman stated in a defense-obtained affidavit that the jury would have convicted her only of manslaughter had it had a "heat of passion" instruction. Based on this affidavit, LaLonde moved for a new trial. The motion was denied, and LaLonde was subsequently given a twenty-year sentence.

■ We find no merit to LaLonde's argument that the jury should have received "heat of passion" instructions, which could have allowed them to mitigate to manslaughter her killing of Yenter, if the jury found that killing to be intentional. In accordance with our decision in *Christie v. State*, 580 P.2d 310, 313–16 (Alaska 1978), involving a defense request for an insanity instruction, we find that a "heat of passion" instruction would have been proper only if LaLonde had produced "some evidence" that she had acted because of extreme provocation, i. e., if there had been evidence in light of which a reasonable juror could have entertained a reasonable doubt with respect to LaLonde's malice.[5] "Heat of passion" and "provocation," however, must be given their legal meanings in the context of manslaughter.

■ We have not previously had occasion to define these terms.[6] In *Austin v. United States*, 382 F.2d 129, 137 (D.C.Cir.1967), the court stated:

> An unlawful killing in the sudden heat of passion—whether produced by rage, resentment, anger, terror or fear—is reduced from murder to manslaughter only if there was adequate provocation, such as might naturally induce a reasonable man in the passion of the moment to lose self-control and commit the act on impulse and without reflection.

The court, in *People v. Morse*, 70 Cal.2d 711, 452 P.2d 607, 76 Cal.Rptr. 391 (1969), *cert. denied*, 397 U.S. 944, 90 S.Ct. 959, 25 L.Ed.2d 124 (1970), said:

> [T]he fundamental of the inquiry is whether or not the defendant's reason

---

with Yenter and no longer had him to defend her.

**3.** At the time of the offense, there was no statutory distinction in Alaska between voluntary and involuntary manslaughter. *See Des Jardins v. State*, 551 P.2d 181, 188 (Alaska 1976). This is also true under the new criminal code. *See* AS 11.41.120. The superior court was apparently referring to the common law crime of voluntary manslaughter, where there is an intent to kill the victim but that intent arose from the "heat of passion." *See generally* R. Perkins, Criminal Law 51–71 (2d ed. 1969).

**4.** Such an instruction was given inadvertently and was withdrawn from the jury's considera-

tion when the error was discovered. The defense attorney objected to the withdrawal.

**5.** "A provoked killing in the heat of passion is not murder; the provocation negates the malice which is an essential element of murder." *Padie v. State*, 557 P.2d 1138, 1141 (Alaska 1976).

**6.** *See* 1 R. Anderson, Wharton's Criminal Law and Procedure § 275, at 583 (1975): "The passion aroused by the provocation must be so violent as to dethrone the reason of the accused for the time being; it must prevent thought and reflection, and the formation of a deliberate purpose."

was, at the time of his act, so disturbed or obscured by some passion—not necessarily fear and never of course passion for revenge—to such an extent as would render *ordinary men of average disposition* liable to act rashly or without due deliberation and reflection, and from this passion rather than from judgment. (Emphasis added.)

*Id.* at 621, *quoting People v. Logan*, 175 Cal. 45, 164 P. 1121, 1122–23 (1917).[7] We agree with the "reasonable person" standard for reducing a murder conviction to manslaughter, and conclude that on the evidence presented, reasonable jurors could not find that LaLonde was sufficiently provoked to reduce her conviction to manslaughter, and therefore there was no error in refusing to give a "heat of passion" manslaughter instruction.

LaLonde admitted that she was not provoked into shooting Dennis Yenter:

Q. Did Dennis Yenter, on the morning that he was shot, do anything to provoke you?

A. In a way, yes, he did. *Not provoke me into something like that, no.* He had—from what he had said about what he was going to do to Jerry [Youhas] and everything, he had me terribly upset, yes. [emphasis added]

We interpret LaLonde's remark, "Not provoke me into something like that, no," as denying that she intentionally shot Yenter in a rage. We also find, assuming arguendo that she might have been adequately provoked by her conversation with the mechanic, that as a matter of law she had sufficient time to cool off before she shot Yenter. The conversation occurred several hours before the killing. A "reasonable person" would not have been so provoked by the statement that she would have considered homicide several hours later.[8]

■ The affidavit of the jury foreman, regarding the jury's intent to convict LaLonde only of manslaughter, was not properly before the court. As we stated in *Des Jardins v. State*, 551 P.2d 181, 190 (Alaska 1976), another criminal case:

As we have said repeatedly, an affidavit from a juror concerning the jury's behavior will not be considered to impeach the jury verdict except in instances where the affidavit alleges " 'fraud, bribery, forcible coercion or any other obstruction of justice.' "

We cannot accept LaLonde's creative argument that what is involved here is an obstruction of the concept of justice.[9]

■ We also must reject LaLonde's contention that her twenty-year sentence is excessive. She argues that the sentencing judge ignored rehabilitation in passing sentence.[10] We find, however, that the judge did not ignore this factor; rather he simply gave greater emphasis to the *Chaney*[11] factors of deterrence of others and reaffirmation of societal norms. It is within the discretion of the sentencing judge to assign priorities among the *Chaney* factors. *Asitonia v. State*, 508 P.2d 1023, 1026 (Alaska 1973). Because this sort of "domestic" murder occurs all too frequently, the deterrence of others is an important consideration. Murder is among the most serious of criminal offenses, and societal norms call for harsh condemnation. The sentence imposed

7. *See also* R. Perkins, Criminal Law 55 (2d ed. 1969); W. LaFave and A. Scott, Criminal Law § 76 (1972).

8. *See* W. LaFave and A. Scott, Criminal Law § 76 at 579–80 (1972) (majority view does not allow heat-of-passion defense to murder when reasonable person adequately provoked would have cooled).

9. At any rate, the fact that the jury would have found heat-of-passion mitigation does not matter when, as here, there are no grounds for such mitigation as a matter of law.

10. He stated, "Certainly, if only the defendant were to be considered, she might be a good candidate for probation."

11. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970).

here is far less than the maximum sentence of life imprisonment permitted for second degree murder. We therefore cannot say that the trial judge was "clearly mistaken"[12] in imposing it.[13]

The judgment of conviction and the sentence are AFFIRMED.

12. *McClain v. State*, 519 P.2d 811, 814 (Alaska 1974).

13. This case is similar to *Condon v. State*, 498 P.2d 276 (Alaska 1972), in which we affirmed a 20-year sentence upon a conviction of second degree murder. Condon killed his neighbor about 20 minutes after learning that the neighbor had had sexual relations with Condon's wife. While Condon's psychiatric assessment was quite poor, *id.* at 287, he apparently had only one prior criminal conviction, and the provocation involved was greater than in LaLonde's case.