**Lester W. BOOTH Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–10281.**

Court of Appeals of Alaska.

April 29, 2011.

---

Julia D. Moudy, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

James Scott, Assistant District Attorney, Ketchikan, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Lester W. Booth Jr. was charged with assaulting one of the two police officers who came to arrest him in response to a report of domestic violence. In his defense, Booth asserted that the police officers used excessive force when making the arrest, and that the officers then attempted to justify their use of excessive force by fabricating a story that Booth had assaulted one of them.

Before trial, Booth asked the district court to order disclosure of certain portions of the two police officers' personnel files—specifically, any prior citizen complaints against these officers for using excessive force, any disciplinary actions initiated against the officers based on the use of excessive force, or any records pertaining to the officers' training in the use of the weapons that the officers deployed during Booth's arrest. The district court declined to order disclosure of the personnel files, and the court also declined to take the intermediate step of examining the files *in camera* to see if the files contained the type of information that Booth was seeking.

For the reasons explained in this opinion, we conclude that the district court should have examined the personnel files *in camera* to see if the files contained citizen complaints of excessive force, disciplinary actions based on the use of excessive force, or training in the use of pepper spray. We accordingly remand this case to the district court so that the court can conduct this *in camera* inspection.

### Underlying facts

In the early morning of February 17, 2008, Ellen Booth called 911 to report that her husband, Lester Booth, was beating her up. Metlakatla Police Officers George Bailey and Alec Griffith responded to the Booth residence, where they found Lester Booth sitting on the couch. Booth was extremely intoxi-

cated: he was drooling and leaning forward with his elbows on his knees. Booth's wife, Ellen, had a cut above her eye and blood on her nose.

Officer Griffith took Ellen Booth outside and questioned her, while Officer Bailey attempted to take Lester Booth into custody. Bailey repeatedly told Booth to stand up and to put his hands behind his back. Initially, Booth failed to respond to Bailey's commands. Then, after Bailey took the initiative by handcuffing Booth's left wrist, Booth straightened his arms and clenched his fists. Bailey tried to persuade Booth not to resist; he told Booth not to "make this worse than it really has to be."

According to the testimony of both Bailey and Griffith, Booth responded by drawing back his right fist and asking Bailey, "You want to fight?" Bailey thought Booth was about to hit him. Griffith sprayed Booth in the face with pepper spray. The two officers then forced Booth to the floor and secured him in handcuffs.

Booth was charged with fourth-degree assault upon his wife (for inflicting physical injury on her), fourth-degree assault upon Bailey (for placing Bailey in apprehension of imminent physical injury), and resisting arrest.[1]

Before his trial, Booth filed a motion asking the district court to compel the State to produce the personnel files of Officers Bailey and Griffith. Booth argued that he was entitled to review these personnel records, even if the records would normally be confidential, because the personnel records might contain information relevant to his defense (*i.e.*, relevant to his claim that Officer Griffith used excessive force, and that the officers then fabricated a story that Booth had assaulted Bailey and resisted arrest). As an alternative to outright disclosure of the personnel files, Booth asked the district court to review the files *in camera*—with the idea that, if the court's *in camera* inspection revealed any information relevant to Booth's defense, the court would then disclose that information to Booth.

---

1.   AS 11.41.230(a)(1), AS 11.41.230(a)(3), and AS    11.56.700(a)(1), respectively.

District Court Judge Kevin G. Miller denied both aspects of Booth's motion (*i.e.*, both the request for immediate disclosure and the alternative request for *in camera* inspection). Judge Miller ruled that Booth had failed to justify even an *in camera* inspection of the officers' personnel files because Booth had failed to present any evidence suggesting "that the [personnel] records ... contain[ed] evidence relevant to Mr. Booth's defense."

At trial, Booth's attorney asserted that Officer Griffith used excessive force against him (by spraying Booth with pepper spray), and that, to justify Griffith's conduct, the officers then fabricated (or at least exaggerated) their allegations that Booth assaulted Bailey and resisted arrest.

The jury convicted Booth of assaulting his wife and also convicted him of assaulting Officer Bailey (for threatening the officer). However, the jury acquitted Booth of resisting arrest.

On appeal, Booth challenges the district court's decision to deny Booth's request for pre-trial review and disclosure of the two officers' personnel files.

*The standard of review that applies to this Court's review of the district court's decision*

Before we reach the merits of the issue raised on appeal, we must identify the standard of review that governs our decision. The phrase "standard of review" refers to the degree of deference that an appellate court must accord to the decision of the lower court or administrative agency whose ruling is being reviewed.[2]

The State asserts that "abuse of discretion" is the standard of review that governs an appellate court's consideration of a trial court's ruling on a motion to compel discovery. If, indeed, this is the proper standard of review, then this Court would be obliged to affirm the district court's ruling in Booth's case unless we were convinced that the district court's decision was "clearly untenable or unreasonable",[3] or unless we were "left with a definite and firm conviction that the [trial] court erred."[4]

As the State notes in its brief, the Alaska appellate courts have repeatedly declared that "abuse of discretion" is the standard that governs appellate review of a trial court's decision on a motion to compel pre-trial discovery.[5] But this is not true as a general proposition of law. There is no single standard of review that governs all trial court decisions involving pre-trial discovery—no more than there is a single standard of review that governs all evidentiary rulings or all decisions involving jury instructions.

To identify the proper standard of review, one must identify the *underlying issue* to be resolved by the appellate court. Broad categories such as "pre-trial discovery", "admission or exclusion of evidence", or "jury instructions" merely identify the *context* in which that issue arose. Within these broad categories, trial judges make many kinds of decisions—rulings of law, findings of fact, and exercises of discretion.

If the underlying problem confronting the appellate court is to ascertain the law or the legal test that applies to a given situation, then the appellate court will apply the "independent judgement" or *"de novo"* standard of review.[6] Under this standard of

---

**2.** *Nelson v. State*, 68 P.3d 402, 406 (Alaska App. 2003); *Peplinski v. Fobe's Roofing, Inc.*, 193 Wis.2d 6, 531 N.W.2d 597, 599 n. 1 (1995) ("Standards of review are measures of the degree of deference that appellate courts must pay to lower tribunals, most notably trial courts."); *Turner v. Jackson*, 14 Va.App. 423, 417 S.E.2d 881, 887 n. 5 (1992) ("The term 'standard of review' ... refers to the degree of deference an appellate court gives a determination by an agency or lower court.").

**3.** *Gonzales v. State*, 691 P.2d 285, 286 (Alaska App.1984).

**4.** *Lee v. State*, 141 P.3d 342, 346–47 (Alaska 2006).

**5.** *See, e.g., Lee v. State*, 141 P.3d 342, 346 (Alaska 2006); *Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1146 (Alaska 1999); *Stone v. International Marine Carriers, Inc.*, 918 P.2d 551, 554 (Alaska 1996); *R.E. v. State*, 878 P.2d 1341, 1345 (Alaska 1994); *Collier v. Anchorage*, 138 P.3d 719, 722–23 (Alaska App.2006).

**6.** *State v. Galbraith*, 199 P.3d 1216, 1218 (Alaska App.2009).

review, the appellate court will not defer to the lower court's decision.

■ If the lower court's ruling hinges on a finding of historical fact, then the appellate court will apply the "clearly erroneous" standard of review. Under this standard of review, the appellate court must affirm the lower court's finding of fact unless, after reviewing the entire record, the appellate court is left "with a definite and firm conviction ... that a mistake has been made, although there may be evidence to support the [lower court's] finding." [7]

■ The "abuse of discretion" standard applies to situations where (a) the law does not specify a particular "right" answer or response to the situation, but instead only specifies the factors or criteria that a judge should consider, and (b) reasonable judges, given the same facts and applying the correct criteria, might come to differing conclusions about how to deal with the problem. In other words, the "abuse of discretion" standard of review applies to situations where the law allows or requires the judge to exercise discretion—to reach a decision by considering and weighing various factors, and then doing what seems most fair under the circumstances.

In matters involving pre-trial discovery, trial judges often make decisions that involve the exercise of discretion—decisions such as setting or amending deadlines for the completion of discovery, or restricting discovery requests that appear to be needlessly burdensome or cumulative.

But the underlying issue in Booth's case is an issue of law: we are asked to determine the threshold showing that a defendant must make in order to obtain pre-trial disclosure of a police officer's personnel file, or at least *in camera* review of that file by the trial judge for the purpose of determining whether the file should be disclosed in whole or in part.

■ Even though this issue arose in the context of a judicial decision regarding pre-

trial discovery, the applicable standard of review is the "independent judgement" or "*de novo*" standard. This case does not raise the question of whether the trial judge made a reasonable decision in a matter entrusted to the judge's discretion. Rather, the question we must decide is whether the trial judge used the correct legal test when he denied Booth's discovery request.

As we explained earlier, the term "standard of review" refers to the degree of deference that an appellate court must show to the decision of the lower court. When the underlying issue on appeal is to identify the law or the legal test that governed the proceeding in the lower court, we do not defer to the trial judge's decision.

Prior appellate decisions on this topic, when read carefully, acknowledge that there is no single standard of review that applies to all pre-trial discovery rulings—and that the applicable standard of review hinges on the underlying legal problem to be resolved. For example, even though the supreme court declared in *Lee v. State* that "discovery orders [are reviewed] under the deferential abuse of discretion standard",[8] the court immediately qualified this statement by adding that it would apply the "independent judgement" standard of review if "the [underlying] legal question [is] whether the [trial] court weighed the appropriate factors in issuing [the] discovery order." [9]

For these reasons, we reject the State's contention that our review of the district court's ruling is governed by the "abuse of discretion" standard of review, and that we should therefore defer to the district court's ruling unless that ruling is shown to be clearly untenable or unreasonable. Instead, we will decide this legal issue *de novo*.

*The threshold showing that a criminal defendant must make in order to obtain in camera review of a police officer's personnel file*

As our supreme court acknowledged in *Jones v. Jennings*, public employees can rea-

---

**7.** *Geczy v. LaChappelle*, 636 P.2d 604, 606 n. 6 (Alaska 1981); *Mathis v. Meyeres*, 574 P.2d 447, 449 (Alaska 1978).

**8.** 141 P.3d 342, 346 (Alaska 2006).

**9.** *Id.* at 346–47.

sonably expect that "the details contained within [their] personnel file are confidential and [will] not [be] subject to public scrutiny."[10] However, the supreme court also recognized that "[a public employee's] right to privacy is not absolute."[11] This is especially true when the public employee is a police officer, because (as the supreme court stated), "[t]he cornerstone of a democracy is the ability of its people to question, investigate[,] and monitor the government" in its exercise of coercive power.[12]

■ As this Court held in *Dana v. State,* 623 P.2d 348 (Alaska App.1981), we believe that these competing values are best resolved using the following rule: If the defendant identifies a type of information that would be relevant to the defendant's guilt or innocence (in light of the facts of the case, the State's theory of prosecution, and the defendant's theory of defense), and if this type of information is the kind of information that would be recorded in a police officer's personnel file, then the defendant is entitled to have the trial judge review the personnel file *in camera* to see if the file contains the specified type of information. If, during this *in camera* review, the judge discovers that the personnel file does indeed contain this information, then the judge should turn the information over to the defense.

In *Dana,* we acknowledged that requests for police personnel files presented a question of competing interests: the defendant's right of discovery versus the interest of police officers and police departments in maintaining the confidentiality of personnel files.[13] As a guide for resolving this question, we approvingly quoted the New York Court of Appeals' discussion of this issue in *People v. Gissendanner,* 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924 (1979).

In *Gissendanner,* the New York high court drew a distinction between personnel information that is directly relevant to the defendant's guilt or innocence and, on the other hand, personnel information that merely provides grounds for impeaching a police witness on collateral issues, or on matters of the witness's general credibility:

[Disclosure] must be [granted when] otherwise confidential data [is] relevant and material to the determination of [the defendant's] guilt or innocence, as, for example, when a request for access is directed toward revealing specific "biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand," or when [the request] involves other information which, if known to the trier of fact, could very well affect the outcome of the trial.... [But disclosure need not be granted] when requests to examine [personnel] records are motivated by nothing more than impeachment of witnesses' general credibility [or when] ... the defendant [has] failed to demonstrate any theory of relevancy and materiality, but, instead, merely desire[s] the opportunity for an unrestrained foray into confidential records in the hope that the unearthing of some unspecified information would enable him to impeach the witness.

*Gissendanner,* 399 N.E.2d at 927–28, 423 N.Y.S.2d at 896 (quoted in *Dana,* 623 P.2d at 355).

In *Cockerham v. State,* 933 P.2d 537 (Alaska 1997), the Alaska Supreme Court approvingly cited our decision in *Dana* (and the New York Court of Appeals' decision in *Gissendanner*) as setting forth appropriate limits on defense requests for disclosure of police personnel files. *Cockerham,* 933 P.2d at 543 n. 19. In other words, the supreme court apparently approved the distinction we drew in *Dana* between, on the one hand, requests for information that is directly related to the defendant's guilt or innocence (*i.e.,* information directly relevant to assessing a police officer's likely conduct, biases, or motives) and, on the other hand, requests for information that is relevant (if at all) only for impeaching a police officer's general credibility or impeaching the officer's testimony on collateral matters, or requests for disclosure

---

**10.** 788 P.2d 732, 738 (Alaska 1990).

**11.** *Ibid.*

**12.** *Id.* at 735.

**13.** *Dana,* 623 P.2d at 355.

whose only support is the hope that something might turn up.[14]

A defendant need not affirmatively show that, more likely than not, the requested personnel files actually *do* contain evidence relevant to the defendant's guilt or innocence. Instead, the defendant need only show that *if* the requested personnel files contain the sort of information described in the defendant's motion, this information would be relevant to the defendant's guilt or innocence (given the facts of the case, the State's theory of prosecution, and the defendant's theory of defense). This is the interpretation that we employed in *March v. State*, 859 P.2d 714 (Alaska App.1993).

The defendant in *March* was charged with hunting moose "same day airborne"—*i.e.*, hunting on the same day that he was transported by airplane to the site of the hunt.[15] March's partner on this hunt, Jesse Sweatt, testified for the State at March's trial.[16]

While March's trial was pending, March's brother wrote a letter to the Fish and Wildlife Protection Agency, complaining that the state trooper who investigated the case had given preferential treatment to Sweatt. This letter led the Fish and Wildlife Protection Agency to conduct an internal investigation of the trooper's handling of the case. March then requested (and apparently obtained) disclosure of the Agency's file pertaining to this internal investigation.[17]

In addition, March requested disclosure of the trooper's personnel file, arguing that this file might contain evidence that the trooper had given preferential treatment to friends or acquaintances in previous cases.[18] The trial judge initially decided to review the

trooper's personnel file *in camera* to see if it contained any information of the type March was seeking, but then the judge changed his mind and denied March's request for disclosure without conducting an *in camera* review of the file.[19] The judge concluded that March was not entitled to disclosure of the personnel file, or even an *in camera* judicial review of the file, unless March affirmatively showed that the file probably contained admissible evidence of the trooper's bias.[20] In other words, the trial judge in *March* required the defendant to affirmatively show that it was likely that the personnel file actually contained the evidence the defendant was seeking.

We held that the trial judge committed error by requiring the defendant to prove, as a prerequisite to judicial *in camera* inspection of the personnel file, that the file likely contained the sought-after evidence:

> We are concerned that the trial court's requirement that March demonstrate the admissibility of [the] materials in [the trooper's] file as a prerequisite to *in camera* review of the file may have been unduly stringent. A party seeking discovery cannot be expected to convincingly argue admissibility in a vacuum, without knowing the precise character of the information in the confidential file. Nor can the trial court make an informed ruling on the discoverability of confidential materials without having reviewed them. As long as the party seeking discovery has a good faith basis for asserting that the materials in question may lead to the disclosure of favorable evidence, the trial court should

---

14. One aspect of this Court's analysis in *Dana* was mistaken: we erroneously characterized the defendant's right of discovery as a component of the constitutional right of confrontation. 623 P.2d at 355. As the supreme court explained in *Cockerham*, a defendant's request for pre-trial discovery does not implicate the confrontation clause. The confrontation clause guarantees defendants the right to *use whatever evidence they have* when confronting and/or impeaching government witnesses, but the confrontation clause does not guarantee a right of pre-trial discovery. Rather, the right of discovery arises from the constitutional guarantee of due process of law. *Cockerham*, 933 P.2d at 541–43.

15. *March*, 859 P.2d at 715.

16. *Id.* at 715–16.

17. *Id.* at 717.

18. *Ibid.*

19. *Ibid.*

20. *Ibid.*

conduct an *in camera* review before ruling on a request for discovery.

*March,* 859 P.2d at 718.

In other words, we held that the trial judge should have used the approach we adopted in *Dana:* the judge should have conducted an *in camera* inspection of the personnel file because, if the personnel file contained the sort of information described in the defendant's motion, this information would have been relevant to the defendant's guilt or innocence, not just relevant to impeachment of the witness's general credibility or impeachment of the witness on collateral matters.

Our decision in *March* is consistent with the approach taken by the New York Court of Appeals in *Gissendanner.* *Gissendanner* holds that the defendant does *not* need to show that the personnel file actually contains, or is likely to actually contain, the specified relevant information. Rather, the *Gissendanner* decision supports the test that this Court applied in *Dana* and in *March.* Here is the pertinent discussion from *Gissendanner:*

> [A] defendant [need not] make a preliminary showing that the [personnel] record actually contains information that carries a potential for establishing the unreliability of either the criminal charge or of a witness upon whose testimony it depends. ... What [the prior decisions] call for is [a] good faith ... factual predicate which would make it reasonably likely that the [personnel] file will bear such fruit and that the quest for its contents is not merely a desperate grasping at a straw.

*Gissendanner,* 399 N.E.2d at 928, 423 N.Y.S.2d at 897.

And we again note that the Alaska Supreme Court, in its *Cockerham* decision, seemingly endorsed the approach employed in *Dana* and *Gissendanner.* *Cockerham,* 933 P.2d at 543 n. 19.

It is important to emphasize that when a defendant satisfies the *Dana* threshold re-

quirement, this does not mean that the defendant becomes entitled to outright disclosure of the requested personnel file. Rather, the defendant becomes entitled to have the trial judge examine the file *in camera* to see if it contains information relevant to the issue(s) that the defendant has identified. *See March,* 859 P.2d at 717.[21]

There is one further aspect of this problem that merits discussion.

■ When a defendant asks a judge to undertake *in camera* review of a police personnel file on the ground that the file may contain evidence relevant to the defendant's guilt or innocence, the defendant must support that motion with more than conclusory statements or unsupported assertions.

Alaska Criminal Rule 42(b)(2) states that a motion must be supported by a "complete ... statement of the reasons in support of the motion, [including] a detailed statement of material facts which can be proved by the [moving] party". This supporting statement of facts must consist of facts already before the court (*i.e.,* facts contained in the existing record), or an offer of evidence from which the material facts can be proved or inferred.

This procedural requirement applies to defense requests for judicial *in camera* inspection of police personnel files. This issue was discussed by the Washington Supreme Court in *State v. Blackwell,* 120 Wash.2d 822, 845 P.2d 1017 (1993). In *Blackwell,* the Washington court reversed a trial judge's decision to order disclosure of police personnel files— because the defendants failed to provide factual support for their underlying assertions about why the information in the files might be relevant.

As the Washington court explained, the trial judge in *Blackwell* ordered the prosecutor to produce the police personnel files based solely on the defense attorney's "suggestion" that the arrests of Blackwell and his co-defendant might have been racially motivated.[22] The Washington court held that

---

**21.** *See also Pennsylvania v. Ritchie,* 480 U.S. 39, 41, 107 S.Ct. 989, 993, 94 L.Ed.2d 40 (1987); *Jones v. Jennings,* 788 P.2d 732, 739 (Alaska 1990); *Balentine v. State,* 707 P.2d 922, 929

(Alaska App.1985); *Braaten v. State,* 705 P.2d 1311, 1320–21 (Alaska App.1985).

**22.** *Blackwell,* 845 P.2d at 1021.

such an unsupported assertion was not enough:

> Although [the defense attorney apparently] believed that Officer Berger [was a] racist, she offered no affidavit, no statement that indicated [Berger] acted as such or was so motivated during [the] incident [in question]. Defense counsel offered nothing regarding Officer Durocher's bias—other than the allegation that since he was Berger's partner there might be a "close association of behavior." At a minimum, defense counsel should have provided an affidavit or representation to the court asserting the factual basis for believing the arrest of their clients was racially motivated.

*Blackwell*, 845 P.2d at 1021.

The Washington court rejected the notion that the defendants were entitled to the police officers' personnel files based merely on unsupported assertions that these files "*could* lead to exculpatory evidence of improper police conduct [or of] arrests based on race and excessive force", or that the files "*may* lead to material information".[23] Rather, the court declared, a defendant "must advance some factual predicate which makes it reasonably likely [that] the requested file will bear information material to his or her defense", and that "[a] bare assertion that a document 'might' bear such fruit is insufficient."[24]

We agree with the Washington Supreme Court's discussion of this issue, and we endorse the proposition that a defendant must present a factual predicate for their discovery request—either pointing to facts already within the record, or making an offer of proof that provides the evidentiary foundation for the request.

### Application of this law to Booth's case

█ In his pre-trial request for disclosure of the two officers' personnel files, Booth asserted that the two officers used excessive force against him, and he argued that any information in the officers' personnel files pertaining to prior citizen complaints of ex-

cessive force, or any disciplinary actions initiated against the officers based on the use of excessive force, would be relevant to Booth's planned defense. However, by the time Booth's defense solidified at trial, Booth no longer claimed that Officer Bailey had mistreated him. Instead, Booth's theory was that Officer Griffith was the one who overreacted by using pepper spray on Booth.

We note that when Booth's attorney made the assertion that the officer subjected Booth to excessive force, this assertion was not supported by references to anything in the existing record, nor was it supported by affidavits of witnesses with personal knowledge of the events in question, or of witnesses who knew of prior occasions when the officer used excessive force. In other words, Booth's motion for disclosure or *in camera* inspection of the personnel files did not comply with Alaska Criminal Rule 42(b). Had an objection been offered by the State or by the trial judge on this ground, and had Booth's attorney failed to rectify this deficiency, this would have been a sufficient reason for denying Booth's motion.

But even though Booth's motion was legally deficient in this respect, the prosecutor voiced no objection. Instead, the prosecutor treated the matter as having been well-pleaded, and the prosecutor addressed only the merits of Booth's claim. Likewise, Judge Miller did not deny Booth's motion based on any procedural irregularity or deficiency; rather, the judge denied Booth's motion on its merits.

Turning to the merits of Booth's discovery motion, Booth asserted that Officer Griffith used excessive force against him (by spraying Booth with pepper spray)—and then, to justify Griffith's conduct, Griffith and his partner Bailey fabricated or exaggerated their allegations that Booth assaulted Bailey and resisted arrest. Given these factual assertions, and given Booth's theory of defense at trial, we find that Booth satisfied the threshold requirement for an *in camera* inspection of Officer Griffith's personnel file for prior complaints of excessive force or disciplinary actions based on the use of excessive

---

**23.** *Ibid.*

**24.** *Id.* at 1022.

force. On the other hand, Booth's factual assertions failed to satisfy the threshold requirement for an *in camera* inspection of Officer Bailey's personnel file concerning these matters.

Given our conclusion that Booth was entitled to have Judge Miller conduct an *in camera* inspection of Officer Griffith's personnel file, we must remand Booth's case to the district court so that Judge Miller can examine the personnel file.

■ Booth also requested the disclosure of Officer Griffith's training records with respect to the police department policy governing the use of pepper spray on arrestees. These records were arguably relevant because, if Griffith used pepper spray on Booth in violation of department policy, this might be a motivation for him to lie about whether Booth engaged in aggressive actions toward the officers. The district court should therefore examine Griffith's personnel file to see if it contains any information regarding Griffith's training on the permitted use of pepper spray.

As we explained in *March*, the proper course at this point is to have the trial judge conduct an *in camera* review of the personnel file to see if it contains any information relevant and material to Booth's defense. If Judge Miller examines the file and concludes that it does not contain any such information, he should report this fact to us, and he should forward the file to us so that we can independently review his conclusion.

If, on the other hand, Judge Miller examines the file and concludes that it contains information that should have been disclosed to Booth, the judge should turn that information over to Booth, and the judge should order a new trial on the charge of assaulting Officer Bailey unless he concludes that the

failure to provide this information to Booth was harmless error.[25]

Judge Miller shall conduct the *in camera* examination of the personnel file, and shall report his findings to this Court, within 60 days of the issuance of this opinion. We retain jurisdiction of Booth's case.

The outcome of the district court's *in camera* examination of Officer Griffith's personnel file will be pertinent only to the validity of Booth's conviction for assaulting Officer Bailey. Accordingly, Booth's conviction for assaulting his wife is AFFIRMED.

BOLGER, Judge, dissenting.

BOLGER, Judge, dissenting.

I respectfully dissent. The district court's ruling was a reasonable application of the appropriate rule.

Judge Miller ruled that the defendant had not made a sufficient showing that the requested records were material to his defense:

> The defense has made no showing that the records sought contain evidence relevant to Mr. Booth's defense. The court cannot compel production based on conjecture as to what might exist in these records.

This ruling accurately stated the appropriate legal standard. Alaska Criminal Rule 16(b)(7) provides:

> Upon a reasonable request showing materiality to the preparation of the defense, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by subsections (b)(1), (b)(2), (b)(3), and (b)(6).

The language of this rule requires defense counsel to make a reasonable showing of materiality before the court will order discovery.[1] When requesting an officer's personnel

---

25. *See March*, 859 P.2d at 718.

1. *See Schmid v. State*, 615 P.2d 565, 571 (Alaska 1980) (quoting *People v. Garcia*, 67 Cal.2d 830, 64 Cal.Rptr. 110, 434 P.2d 366, 370 (1967) (holding that an informant's identity does not need to be disclosed unless the defendant demonstrates "a reasonable possibility that the anonymous informant could give evidence on the issue of guilt or innocence which might result in the defendant's exoneration")); *Gunnerud v. State*, 611

P.2d 69, 72 (Alaska 1980) (denying disclosure of psychiatric evaluation of prosecution witness in the absence of a showing of relevance); *Sawyer v. State*, 244 P.3d 1130, 1133–34 (Alaska App. 2011) (holding that other incidents involving children handling firearms were not sufficiently similar to require discovery); *Carman v. State*, 658 P.2d 131, 140 (Alaska App.1983) (noting that items listed in Rule 16(b)(7) need to be produced only where their materiality is shown).

file, defense counsel must show that it is reasonably likely that the file will contain relevant information.[2]

We review an order denying a motion to compel discovery for abuse of the discretion granted by this rule.[3] In this case, the record supports Judge Miller's conclusion that Booth's request was based only on conjecture.[4] Booth did not make any showing that the police used excessive force against him in this case. And Booth did not make a showing of any likelihood that the officers involved had a history of using excessive force.

The absence of an adequate showing of materiality distinguishes this case from *March v. State*, where the defendant demonstrated that the investigating officer was under investigation for giving favorable treatment to an acquaintance.[5] The Alaska courts have affirmed trial court orders denying similar requests where the defendant failed to make a sufficient showing that the requested information was material to the defense case.[6]

I believe that Judge Miller's ruling is supported by the record and the language of the applicable rule. I conclude that he did not commit an abuse of discretion.

---

**2.** *See State v. Acinelli*, 191 Ariz. 66, 952 P.2d 304, 309 (Ariz.App.1997) (quoting *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir.1992)) (requiring the defendant to show that the personnel file "contain[s] material evidence"); *State v. Ainsworth*, 151 N.H. 691, 867 A.2d 420, 423 (2005) (stating that the defendant must establish "that there [is] a realistic and substantial likelihood that evidence helpful to his defense would be obtained from the officers' personnel files"); *People v. Gissendanner*, 48 N.Y.2d 543, 423 N.Y.S.2d 893, 399 N.E.2d 924, 928 (1979) (stating that the defendant must show "some factual predicate which would make it reasonably likely that the file will bear such fruit"); *State v. Blackwell*, 120 Wash.2d 822, 845 P.2d 1017, 1022 (1993) (stating that the defendant must "advance some factual predicate which makes it reasonably likely the requested file will bear information material to his or her defense").

**3.** *Gunnerud*, 611 P.2d at 72–73; *Collier v. Anchorage*, 138 P.3d 719, 722 (Alaska App.2006).

**4.** *See Charles v. State*, 232 P.3d 739, 742 (Alaska App.2010) (noting that under Alaska Criminal Rule 42, a moving party must include a "detailed statement of material facts" and all "documentary evidence" that supports a motion).

**5.** 859 P.2d 714, 717 (Alaska App.1993).

**6.** *See Cockerham v. State*, 933 P.2d 537, 543 (Alaska 1997) (denying defense request for *in camera* review where relevance of victim's juvenile record was "highly tenuous"); *Dana v. State*, 623 P.2d 348, 355 (Alaska App.1981) (denying mid-trial request where defense had not made "a sufficient showing of his need" for police officer's personnel file).