Vincent E. WILKERSON, Appellant & Cross–Appellee,

v.

STATE of Alaska, Appellee & Cross–Appellant.

Nos. A–10564, A–10573.

Court of Appeals of Alaska.

Feb. 24, 2012.

Beth Lewis Trimmer and Dan Bair, Assistant Public Advocates, Appeals & Statewide Defense Section, and Rachel Levitt and Richard Allen, Public Advocates, Anchorage, for Mr. Wilkerson.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and John J. Burns, Attorney General, Juneau, for the State.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Vincent Edward Wilkerson was found guilty of first-degree murder, evidence tampering, and third-degree weapons misconduct (felon in possession of a concealable firearm), all stemming from the shooting death of his brother, Gregory Wilkerson. In this appeal, Wilkerson challenges his murder and evidence-tampering convictions on four grounds.

First, Wilkerson argues that his trial judge committed error by refusing to instruct the jury on heat of passion (a defense that potentially could have reduced the homicide to manslaughter).

Second, Wilkerson argues that the jury instruction on self-defense contained an inaccurate statement of law—an inaccuracy that would have led the jury to believe that Wilkerson's right to use force in self-defense hinged on whether there was an *actual* need for Wilkerson to act in self-defense, as opposed to whether a reasonable person in Wilkerson's situation would have *reasonably perceived* a need to act in self-defense.

Third, Wilkerson argues that the trial judge committed error by instructing the jury that a person's act of flight could be considered evidence of that person's consciousness of guilt.

Finally, Wilkerson argues that the trial judge committed error by allowing the State to introduce evidence of Wilkerson's character for violence through the testimony of a police detective who had no personal knowledge of Wilkerson, nor of Wilkerson's reputation in the community, but who had formed his opinion of Wilkerson's character by reviewing Wilkerson's case files.

As we explain in this opinion, we conclude that there is merit to Wilkerson's claim regarding the admission of the character evi-

dence. This evidence was admitted in error—but, for the reasons explained here, we conclude that the error was harmless. With regard to Wilkerson's other three claims, we conclude that they have no merit.

The State has filed a cross-appeal raising one issue: the State contends that Wilkerson should have been precluded, as a matter of law, from asserting the defense of self-defense because Wilkerson was a convicted felon at the time of this incident, and because Wilkerson used a concealable firearm. We conclude that this issue is moot.

*Whether the trial judge was required to instruct the jury on heat of passion*

At trial, Wilkerson sought to have the jury instructed on heat of passion. To justify this instruction, there had to be evidence to support three findings: (1) that Wilkerson committed the homicide while in the heat of passion; (2) that Wilkerson's heat of passion was the result of a serious provocation by his brother; and (3) that a reasonable person in Wilkerson's circumstances would not have cooled down during the interval between the provocation and the homicide. *See* AS 11.41.115(a). *Dandova v. State*, 72 P.3d 325, 330 (Alaska App.2003).

The evidence (viewed in the light most favorable to Wilkerson's claim of heat of passion) showed that the homicide in this case was precipitated by an argument between Wilkerson and his brother Gregory about money and cocaine. During this argument, Wilkerson was armed with a handgun—a 9 mm semi-automatic pistol. This gun was hidden in Wilkerson's pants waist, under his shirt. While Wilkerson argued with his brother, he surreptitiously moved the gun slowly around his waist until it was behind his back.

At some point, Gregory began speaking more belligerently to Wilkerson. According to one witness, Gregory told Wilkerson that he was going to "bust [his] head". According to another witness, Gregory told Wilkerson, "[I've] kicked your ass before; I'll kick your ass again." To this, Wilkerson responded, "I bet it won't happen again."—whereupon he pulled the pistol from under his shirt, brought the weapon out in front of his body, pointed it at Gregory, and shot him. Gregory stumbled and fell face-down on the floor. Wilkerson then stood over his brother and shot him three more times—twice in the back, and once in the back of the head.

Even though the Wilkerson brothers were arguing just before the shooting, there was no evidence of any physical contact between the brothers, and there was no evidence that Gregory Wilkerson was armed, or that he made any statement or gave any other indication that he was armed. The brothers were about ten feet apart when Wilkerson started shooting.

Under AS 11.41.115(f)(2), a "serious provocation" must be "conduct [that was] sufficient to excite an intense passion in a reasonable person in the defendant's situation". And, with regard to the requisite degree of passion, our supreme court explained in *La-Londe v. State*, 614 P.2d 808, 811 (Alaska 1980), that the passion engendered by the provocation must be of such a nature as to obscure the defendant's reason "to such an extent as would render ordinary [persons] of average disposition liable to act rashly or without due deliberation and reflection". Finally, the defendant's assaultive conduct must be proportionate to the provocation. *Dandova*, 72 P.3d at 334.

When Wilkerson's attorney presented his argument for a heat of passion instruction, he recognized that there was little evidence to support a finding that Gregory's belligerent words constituted the kind of "serious provocation" that would cause a reasonable person in Wilkerson's situation to lose their self-control to the point of shooting Gregory several times in the head and back. To overcome the seeming slightness of the provocation that immediately preceded the shooting, and the disproportionality of Wilkerson's response, the defense attorney argued that Gregory had repeatedly mistreated or threatened Wilkerson in the past—including a wrestling match between the two brothers in which Gregory broke Wilkerson's arm; a prior argument (about one year before the shooting) during which Gregory asked where his gun was; and an earlier fight during which Gregory picked up Wilkerson and

474

threw him to the ground. The defense attorney argued that, because of this past history of mistreatment at the hands of his brother, Wilkerson experienced a cumulative, built-up passion that led him to shoot Gregory.

In his brief to this Court, Wilkerson renews this "cumulative effect" argument. He asserts that his response to his brother's belligerent words "cannot be viewed [simply in light] of the events of just the evening in question". Rather, Wilkerson argues, the reasonableness and proportionality of his response must be viewed in light of the "series [of mistreatment] over a span of time".

We discussed this "series of provocations" theory in *Dandova*, 72 P.3d at 334–37, but the facts of *Dandova* did not require us to decide whether Alaska law recognizes this broader approach to the heat of passion defense. We reach the same conclusion here. Given the nature of the prior incidents that Wilkerson relies on, and given the length of time between those prior incidents and the shooting in this case, no reasonable person could conclude that this series of events constituted a "serious provocation" as defined in AS 11.41.115(f)(2).

One might well conclude, based on the past incidents, and based on Wilkerson's conduct in the present case, that Wilkerson harbored a powerful resentment toward his brother Gregory. But as we explained in *Dandova*, "many murders are committed because the killer is experiencing intense emotion at the time", and the defense of heat of passion is not intended to apply to all emotional killings. *Id.* at 332. Rather, heat of passion applies only when the defendant is subjected to a serious provocation that would "naturally induce a reasonable [person] in the passion of the moment to lose self-control and commit the act on impulse and without reflection". *Ibid.* (quoting the supreme court's decision in *LaLonde*, 614 P.2d at 810).

Here, Wilkerson was armed with a pistol during his argument with his brother. Before Gregory uttered the words that Wilkerson now relies on as constituting the necessary provocation, Wilkerson had already gotten up from the couch and had surreptitiously moved his pistol to a hidden position

behind his back. Then, when Gregory told Wilkerson, "[I've] kicked your ass before[, and] I'll kick your ass again," Wilkerson responded, "I bet it won't happen again." Wilkerson then pulled out his gun and shot his brother. After his brother fell to the floor, Wilkerson stood over him and shot him three more times—twice in the back, and once in the back of the head.

Given these facts, and even in light of the brothers' past interactions, no reasonable juror could conclude that Wilkerson acted in the heat of passion. We reach this conclusion for two reasons. First, Gregory's conduct toward Wilkerson did not rise to the level of a "serious provocation". Second, the undisputed facts show that Wilkerson acted deliberately; he was preparing to assault Gregory even before Gregory uttered the words that supposedly triggered the passion in Wilkerson.

For these reasons, we uphold the superior court's decision not to instruct the jury on the defense of heat of passion.

*Whether the jury instruction on self-defense misdescribed the law*

Wilkerson's jury was instructed concerning the law of self-defense. Wilkerson challenges the wording of one of the self-defense instructions. He contends that this instruction misdescribed the law of self-defense. Here is the wording of the challenged jury instruction. The particular portion that Wilkerson objects to is presented in italics:

Even when a defendant faces a threat of imminent death or serious physical injury, the law of self-defense allows the use of force no greater than necessary to avert the threat. *A defendant must have actually believed that the degree of force used was necessary and the belief must have been one that a reasonable person would have held.* A basic [tenet] of the doctrine of self-defense is that the use of deadly force is unreasonable if non-deadly force would have been sufficient to avert the threatened harm. Even in circumstances where a defendant is permitted to use deadly force in self-defense, the defendant may not employ all[-]out deadly force,

[but] only that force necessary to avert the threat.

Wilkerson argues that the italicized sentence—in particular, the phrase "actually believed"—misdescribes the law of self-defense by telling the jury that Wilkerson's right to use force in self-defense hinged on whether there was an *actual* need for Wilkerson to act in self-defense, as opposed to whether a reasonable person in Wilkerson's situation would have *reasonably perceived* a need to act in self-defense.

■ It is true that a person's right to use force in self-defense does not hinge on whether the person actually faced an imminent attack; it is sufficient that, given the circumstances, the person reasonably believed that they were about to be assaulted, even though this belief ultimately turned out to be mistaken.[1]

But the challenged instruction does not say otherwise. The portion of the instruction to which Wilkerson objects does not refer to the actuality of the *danger*; rather, it refers to the actuality of Wilkerson's *belief* that he was in imminent danger.

■ The challenged instruction correctly states that, when a defendant asserts that their use of force against another person was justified by the belief that they were about to be attacked, the defendant must show (1) that they actually held this belief at the time, and (2) that this belief was reasonable.

As our supreme court explained in *Weston v. State*, when a defendant claims that their use of deadly force was justified under the law of self-defense, "[the] defendant must satisfy both an objective and subjective standard; he must have actually believed deadly force was necessary to protect himself, and his belief must be one that a reasonable person would have held under the circumstances." 682 P.2d 1119, 1121 (Alaska 1984). Or, as this Court paraphrased the requirement in *Ha v. State*, "[A] defendant's use of force against [an] enemy is authorized only when the defendant actually and reasonably believes that the enemy's threatened attack

is imminent." 892 P.2d 184, 194 (Alaska App.1995).

In short, Wilkerson's attack on this jury instruction is based on a misreading of the instruction. The instruction does *not* say that a defendant claiming self-defense must show that they actually faced imminent danger, as opposed to reasonably believing that they faced imminent danger. Instead, the instruction speaks to the requisite nature of the defendant's *belief* in the imminent danger: it correctly states that the defendant must have (1) actually and (2) reasonably believed that the circumstances required the immediate use of force in self-defense.

*Whether the trial judge committed error by instructing the jury that a person's flight potentially indicated a consciousness of guilt*

■ Wilkerson's trial judge instructed the jury that "a defendant's flight may tend to prove guilt[, in that] you may consider a defendant's flight as establishing consciousness of guilt." According to Wilkerson, this jury instruction essentially told the jurors that Wilkerson had indeed engaged in an act of flight—thus removing this issue of fact from the jury's consideration.

Wilkerson objected to the instruction in the superior court, but not on this ground. At trial, Wilkerson's attorney argued that there was no evidence to support the giving of this instruction—that is, no evidence that Wilkerson fled the scene of the homicide. But now, on appeal, Wilkerson abandons that argument and instead attacks the jury instruction on a different theory—asserting that the jury instruction unlawfully told the jurors to assume that Wilkerson engaged in an act of flight. Because this latter objection was never presented to the trial judge, Wilkerson must show plain error.

■ There are, of course, many reasons why a person might flee a crime scene, and consciousness of guilt is only one potential reason. But under Alaska law, it is proper to instruct the jurors that they may consider evidence of the defendant's flight, and may give this evidence whatever weight they

---

**1.** *See McCracken v. State*, 914 P.2d 893, 898     (Alaska App.1996).

deem appropriate. *Dyer v. State*, 666 P.2d 438, 449 (Alaska App.1983).

We acknowledge that the jury instruction in Wilkerson's case is not as fully explanatory or descriptive as the flight instructions that have been reviewed in other reported Alaska cases. Nevertheless, it is a correct description of the law on this issue (as far as it goes).

In particular, and contrary to Wilkerson's argument on appeal, the instruction does not affirmatively tell the jurors that Wilkerson engaged in an act of flight. Wilkerson's appellate argument hinges on a strained reading of the instruction, interpreting its words in the light most favorable to a finding of error. But as we have explained, Wilkerson must show plain error; that is, Wilkerson must show that the purported error would have been obvious to any competent judge or attorney.[2]

This jury instruction contains no obvious error of law. We therefore conclude that Wilkerson has failed to show that the giving of this instruction constituted plain error.

*Whether the State should have been allowed to introduce evidence of Wilkerson's character for violence through the testimony of a police detective who had no knowledge of Wilkerson's reputation or character for violence other than what he had gleaned by reading Wilkerson's files*

At trial, Wilkerson asserted that his brother Gregory was the first aggressor, and that he (Wilkerson) acted in self-defense. Accordingly, under Alaska Evidence Rule 404(a)(2), the State was authorized to introduce evidence of Wilkerson's character for violence, to rebut the assertion that Gregory was the first aggressor. However, under Evidence Rule 405, this character evidence was limited to (1) evidence of the defendant's reputation in the community, or (2) evidence of the opinion of a person acquainted with the defendant.

Over Wilkerson's objection, the trial judge allowed the State to introduce evidence of Wilkerson's character for violence through the testimony of the lead investigator in Wilkerson's case, John Foraker. As Wilkerson noted when he objected to this testimony, Detective Foraker had no personal acquaintance with Wilkerson, nor did he purport to know Wilkerson's reputation in the community. Rather, the detective based his opinion on the hearsay information he gleaned by reviewing Wilkerson's criminal record—in particular, Wilkerson's six prior convictions for assault.

The underlying issue here is whether a witness's opinion of another person's character must be based on the witness's personal knowledge. Because this underlying issue is a question of law, the State is incorrect when it asserts that we must review the trial judge's decision under the "abuse of discretion" standard. Instead, we exercise our own independent judgement as to what the law requires.

■ True, many Alaska appellate decisions declare that all of a trial judge's decisions regarding the admission and exclusion of evidence are reviewed for abuse of discretion.[3] But that is wrong: there is no single standard of review that applies to all evidentiary rulings.[4] Rather, the applicable standard of review hinges on what the underlying issue is.[5] Here, the question is whether, under Alaska law, a witness offering an opinion about another person's character must speak from personal knowledge. We are not required to defer to the trial judge's view of this matter; rather, we decide this question *de novo*.

There is little Alaska case law on this issue, but Alaska Evidence Rule 602 codifies the general principle that "[a] witness may not testify to a matter unless evidence is

---

2. *Cleveland v. State*, 241 P.3d 504, 507 (Alaska App.2010); *Simon v. State*, 121 P.3d 815, 820 (Alaska App.2005).

3. *See, e.g., Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980); *Proctor v. State*, 236 P.3d 375, 378 (Alaska App.2010).

4. *Booth v. State*, 251 P.3d 369, 372 (Alaska App. 2011).

5. *Ibid.*

introduced sufficient to support a finding that the witness has personal knowledge of the matter." And decisions from other jurisdictions make it clear that personal knowledge is a foundational requirement for opinion testimony concerning another person's character under Evidence Rule 405.

As explained in Charles Alan Wright and Kenneth W. Graham, Jr., *Federal Practice and Procedure* (1978), § 5265, Vol. 22, p. 584, when a party offers a witness's opinion concerning the character of another person, the rules require that the witness's opinion be based on personal knowledge. Although a long acquaintance is not necessary, "the opinion witness must testify from personal knowledge." *United States v. Watson,* 669 F.2d 1374, 1382 (11th Cir.1982). Or, as stated in *State v. Jackson,* 95 Conn.App. 400, 896 A.2d 137 (2006):

> A party seeking to present opinion testimony [of a person's character] must demonstrate that its witness has had sufficient contact with the person who is the subject of the opinion and, on the basis of [that] contact, has formed an opinion with regard to that person's character.... [T]o lay an appropriate foundation for the introduction of opinion testimony, a party must show that the witness providing the testimony has a deliberate opinion formed as the result of personal contact and experience.

*Id.* at 149. *See also State v. Hernendez,* 184 N.C.App. 344, 646 S.E.2d 579, 580 (2007) ("The proper foundation for the admission of opinion testimony as to a witness's character for truthfulness or untruthfulness is personal knowledge.").

In *Graham v. Lombardi,* 784 P.2d 813 (Colo.App.1989), the Colorado Court of Appeals confronted the same situation presented in Wilkerson's case: a police officer was allowed to offer his opinion that the defendant was a violent person, but the officer's opinion was based solely on his review of the case files pertaining to prior incidents of which the officer had no personal knowledge. The Colorado court held that this testimony was improper because the officer's opinion was not based on personal knowledge:

> Testimony about character offered in the form of an opinion by a lay witness is

limited by [Colorado Evidence Rule] 701 to opinions rationally based on the witness' perception.... The requirement that the opinion be based on the witness' perception embodies the requirement of personal knowledge contained in [Colorado Evidence Rule] 602. *See* 3 *Weinstein's Evidence,* supra, ¶ 701[02] at 701–14; *see also United States v. Dotson,* 799 F.2d 189 (5th Cir.1986).

> Here, the [police] witness had not been involved in the former incidents which provided the basis for his opinion. The witness had none of the personal knowledge necessary to provide a basis for his own perception of the plaintiff's character [for] violence.

> The personal knowledge necessary to support a witness' opinion concerning character must be based on more than pre-trial review of police reports or the witness' involvement in criminal investigations. *See United States v. Dotson,* supra (character evidence as to truthfulness inadmissible if only basis for opinions of government agents was their involvement in criminal investigation of defendants); *Government of Virgin Islands v. Petersen,* 553 F.2d 324 (3rd Cir.1977) (observation of defendant's behavior over time is the recognized basis for both opinion and reputation testimony about character); *United States v. Salazar,* 425 F.2d 1284 (9th Cir.1970) (two months of occasional business dealings insufficient to qualify witness to testify about defendant's reputation for honesty). Accordingly, the opinion testimony here should have been excluded.

*Id.* at 814–15.

██ In light of these authorities, we too conclude that personal knowledge is a foundational requirement for opinion testimony offered under Alaska Evidence Rule 405. Thus, it was error to allow Detective Foraker to give his opinion concerning Wilkerson's character for violence when that opinion was based solely on information that Foraker had gathered from case files pertaining to other incidents of which he had no personal knowledge.

Nevertheless, we conclude that the admission of this evidence was harmless because there is no realistic possibility that it affected the jury's verdict. *See Love v. State*, 457 P.2d 622, 634 (Alaska 1969) (holding that the test for the harmlessness of non-constitutional error is whether the appellate court "can fairly say that the error did not appreciably affect the jury's verdict").

It is true that Detective Foraker's testimony was offered on a central issue in the case: whether Gregory Wilkerson was the first aggressor, thus giving Vincent Wilkerson a right of self-defense. But the eyewitnesses to the shooting were in agreement that Gregory was both unarmed and standing at a distance from Wilkerson when Wilkerson shot him. The eyewitnesses were also in agreement that, after Wilkerson shot his brother in the head, Wilkerson stood over his brother's prostrate body and shot him three more times. Given this record, we conclude that the error in allowing Detective Foraker to offer his opinion of Wilkerson's character for violence did not appreciably affect the jury's decision—in particular, the jury's rejection of Wilkerson's claim that he killed his brother in self-defense.

*The State's contention that the legislature has barred convicted felons from raising a claim of self-defense if, when acting in self-defense, the felon uses a concealable firearm*

Under AS 11.61.200(a)(1), it is illegal for a convicted felon to possess a concealable firearm. And under AS 11.81.330(a)(4)(A), a claim of self-defense is not available to a person whose use of force "was the result of using a deadly weapon or dangerous instrument . . . to further a felony criminal objective of the person".

The State contends that, reading these two statutes together, Wilkerson was precluded from raising a claim of self-defense because he used a pistol against his brother, and because he was pursuing a "criminal objective" simply by possessing this pistol (since it was a concealable firearm). To quote the State's brief, "Wilkerson [could not claim] self-defense because his conduct was illegal from the outset."

The State's proposed interpretation of AS 11.81.330(a)(4)(A) appears to be somewhat at odds with the language of the statute. Subsection (a)(4)(A) speaks of situations where the defendant's use of defensive force is the "result" of the defendant's "using" a deadly weapon or dangerous instrument to further a criminal objective. This language seemingly addresses situations where the defendant uses a deadly weapon or dangerous instrument to further a criminal objective, and then, as a result of the defendant's use of the deadly weapon 'or dangerous instrument, someone (a victim, bystander, or law enforcement officer) takes counter-measures that prompt the defendant to employ force for self-protection.

But we need not resolve this question of statutory construction because the issue is moot in Wilkerson's case. Wilkerson's jury was instructed on self-defense, and the jury rejected this defense. Moreover, we are affirming Wilkerson's conviction, which means that there will be no re-trial. Under these circumstances, there is no need for us to resolve the meaning of AS 11.81.330(a)(4)(A) as it applies to felons who use defensive force while in possession of concealable firearms.

*Conclusion*

The judgement of the superior court is AFFIRMED.