Steven **BACHMEIER**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–10626.

Court of Appeals of Alaska.

May 11, 2012.

Hanley R. Smith, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Scot H. Leaders, District Attorney, Kenai, and John J. Burns, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

BOLGER, Judge.

Steven Bachmeier, who was an inmate at Wildwood Correctional Center near Kenai, was convicted of fourth-degree assault for assaulting a corrections officer. At trial, Bachmeier claimed that he acted in self-defense; specifically, Bachmeier claimed that he reasonably believed that the corrections officer was about to use unlawful force against him. The jury rejected Bachmeier's self-defense claim.

On appeal, Bachmeier argues that the jury's verdict is flawed because the jury was misinstructed regarding the scope of force that a corrections officer may lawfully use against an inmate. We agree, and we therefore reverse Bachmeier's conviction.

### Background

On August 6, 2008, Bachmeier was working as a laundry worker at Wildwood Correctional Facility. Bachmeier took a laundry cart into the prison's property room at the same time that Corrections Officer Magdaleno Dominguez was "dressing out" a new inmate—that is, exchanging the new inmate's personal clothing for institutional clothing, and giving the new inmate institutional bedding.

Bachmeier's laundry cart contained folded institutional clothing, as well as prepared tote bags, some containing institutional bedding and some containing clothing. The prepared tote bags were in the bottom of the cart, while the folded institutional clothing was lying on top of these tote bags.

As Bachmeier started to put the folded clothing onto the shelves of the property room, Dominguez ordered Bachmeier to give him one of the prepared tote bags. Bachmeier answered that he would give Dominguez a tote bag as soon as he completed putting away the folded clothing that was on top of the tote bags. At this point, the State's version of events and Bachmeier's version of events diverge.

According to the State's version, Dominguez told Bachmeier that he needed the tote bag immediately, so that he could complete the process of dressing out the new inmate. In response, Bachmeier asked Dominguez in a "very defiant" manner if Dominguez was "high," or on drugs. Dominguez then announced that Bachmeier was fired from his laundry job for failing to follow a direct order.

According to Dominguez, after he made this announcement, Bachmeier attacked him and punched him twice. Dominguez swung at Bachmeier, but he missed. Bachmeier then put Dominguez into a head lock. Dominguez finally managed to push Bachmeier out of the property room, and other corrections officers intervened and ended the incident.

Besides Dominguez's testimony, Bachmeier's jury heard the testimony of two inmates who witnessed the incident. Although these inmates' testimony was similar to Dominguez's, there were some significant differences. We present those differences in the light most favorable to Bachmeier's claim of self-defense.

According to the first inmate, when Bachmeier did not immediately respond to Dominguez's request for a tote bag, Dominguez removed some of the folded clothing from Bachmeier's laundry cart and threw this clothing onto the floor. In response to Dominguez's act of throwing the clothing onto the floor, Bachmeier asked Dominguez if he was high or on drugs.

This first inmate also testified that when Dominguez fired Bachmeier from his job as a laundry worker, Dominguez was standing close to Bachmeier—within arm's length—and Dominguez gestured with his hand toward Bachmeier. It was in response to this gesture that Bachmeier punched Dominguez.

The second inmate corroborated the first inmate's testimony that Dominguez aggressively approached Bachmeier during this encounter. The second inmate testified that when Dominguez announced that Bachmeier was fired, Dominguez reached across the cart and pointed directly in Bachmeier's face. This inmate described Dominguez as "furious," and he said that Dominguez's gesture was threatening. This inmate had never seen a corrections officer act the way Dominguez was acting, nor had he ever seen a corrections officer as angry as Dominguez was.

According to this second inmate, it looked like Bachmeier was defending himself against Dominguez's threatening hand gesture. This inmate testified that he, too, probably would have hit Dominguez if he had faced the same situation.

Based on this testimony, Superior Court Judge Charles T. Huguelet concluded that Bachmeier was entitled to a jury instruction on self-defense. The judge gave a self-defense instruction that tracked the language of AS 11.81.330(a), which states that a person is justified in using non-deadly force against another person "when and to the extent the person [using the force] reasonably believes [that this force] is necessary for self-defense against what the person reasonably believes to be the use of unlawful force by the other person."

Judge Huguelet also perceived that, because Bachmeier was a prison inmate and Dominguez was a corrections officer, the jury would need to be instructed on the type or degree of force that a corrections officer can lawfully use on an inmate—so that the jury could properly assess whether Bachmeier reasonably believed that Dominguez was using, or was about to use, "unlawful force" against him.

For this reason, Judge Huguelet decided to inform the jurors of the provisions of AS 11.81.410(a):

> [A] guard or peace officer employed in a correctional facility may, if authorized by regulations adopted by the Department of Corrections, use nondeadly force upon another person when and to the extent reasonably necessary and appropriate to maintain order.

When the parties were discussing this instruction, Bachmeier's attorney asked Judge Huguelet to also inform the jurors of the provisions of 22 AAC 05.060, an administrative regulation promulgated by the Department of Corrections defining the circumstances in which a corrections officer can use physical force. Under this regulation:

> [a] facility staff member may not, in a facility, use physical force . . . except when necessary in self-defense, [or] to protect a person from imminent physical harm, [or] to enforce a lawful order of a staff member in the face of physical resistance by a prisoner, [or] to carry out medical instructions, [or] to prevent escape or serious damage to property, or in the conduct of a search[.]

Bachmeier's attorney argued that, because AS 11.81.410(a) only authorized a corrections officer to use force to maintain order "if authorized by regulations adopted by the Department of Corrections," it was important for the jurors to know exactly what the department regulations stated about the permissible uses of force. But Judge Huguelet concluded that it was unnecessary to instruct the jurors regarding this regulation.

Judge Huguelet told Bachmeier's attorney that he had examined the regulation, and that he had considered trying to draft a jury instruction that incorporated the wording of both the statute and the regulation, but he ultimately decided that the wording of the statute—"reasonably necessary and appropriate to maintain order"—adequately covered the same concept as the regulation.

### Discussion

 Judge Huguelet was mistaken when he ruled that the concluding phrase of AS 11.81.410(a), "reasonably necessary and appropriate to maintain order," adequately conveyed the test for deciding when a corrections officer may use force upon an inmate. Under AS 11.81.410(a), a corrections officer's use of force is justified only if it meets both of two tests: the use of force must be "authorized by regulations adopted by the Department of Corrections" and (even when authorized by regulation) the use of force must be "reasonably necessary and appropriate to maintain order." The statute's first requirement, that the officer's use of force be authorized by regulation, is not simply an alternative method of describing the statute's second requirement, that the officer's use of force be reasonably necessary and appropriate to maintain order.

 Further, given the evidence in Bachmeier's case, there is a substantial possibility that, because of Judge Huguelet's refusal to instruct the jurors concerning the requirements of the pertinent regulation, 22 AAC 05.060, the jurors used the wrong legal test

when reaching their decision regarding Bachmeier's claim of self-defense.

Viewing the evidence in the light most favorable to Bachmeier's claim of self-defense, Bachmeier could reasonably have believed that Dominguez was about to physically assault him because he declined to immediately obey Dominguez's order to retrieve a bedding tote from the laundry cart. At trial, the defense attorney argued that Bachmeier's belief was reasonable based on Dominguez's unprofessional act of throwing the folded clothing onto the floor, Dominguez's extreme and unusual anger when Bachmeier did not immediately comply with his directive, Dominguez's aggressive and assertive behavior, his close physical approach to Bachmeier, and his act of lifting his hand toward Bachmeier.

Viewing the evidence in the light most favorable to a claim of self-defense, and under the pertinent Department of Corrections regulation, 22 AAC 05.060, Dominguez would not be authorized to use physical force on Bachmeier under these circumstances—because Bachmeier had not threatened Dominguez or any other person with physical harm, and because Bachmeier had not physically resisted Dominguez's order.

But the jurors were not told about the provisions of this regulation. Instead, the jurors were only told that Dominguez could lawfully use force against Bachmeier "to the extent reasonably necessary and appropriate to maintain order."

Given the evidence, the jurors might have concluded that even if Dominguez was about to hit Bachmeier, Dominguez's action was "reasonably necessary and appropriate to maintain order"—so that, even if Bachmeier reasonably believed that Dominguez was about to hit him, this would have been a lawful use of force on Dominguez's part. The jurors would therefore conclude, mistakenly, that Bachmeier had no right to use force to defend himself from Dominguez—because, under the self-defense instruction that the jurors received (and under AS 11.81.330), Bachmeier had to show that he reasonably believed he was defending himself from unlawful force.

In summary, there is a substantial possibility that the verdict at Bachmeier's trial would have been different if the jurors had been correctly instructed on the rules governing a corrections officer's use of force. The State attempts to avoid this problem by arguing that the preceding discussion does not truly apply to the facts of Bachmeier's case.

The State notes that 22 AAC 05.060 does not speak of a corrections officer's use of "force," but rather the use of "physical force." The State suggests that the phrase "physical force" was intended to mean something narrower than the definition of force contained in AS 11.81.900(b)(27): "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement."

In particular, the State argues that if the phrase "physical force" were interpreted as broadly as the statutory definition of "force," then the Department regulation would prohibit a corrections officer, when faced with an unruly inmate, from even threatening the inmate with "bodily impact, restraint, or confinement" if the inmate did not behave properly and comply with the officer's directives. For this reason, the State argues that the phrase "physical force" must be interpreted narrowly, as meaning only the active application of force, as opposed to a threat of future force, or of future restraint or confinement. The State further argues that, under this narrow definition of "physical force," there was no evidence in Bachmeier's case that Dominguez used physical force against Bachmeier, at least not until Bachmeier punched him.

There are two flaws in the State's argument.

■ First, the State's argument appears to be based on a misreading of AS 11.81.410(a), the statute that defines when a corrections officer's use of force against an inmate is justified. Under AS 11.81.410(a), a corrections officer's use of force against an inmate is not justified unless (1) the use of force is authorized by a Department of Corrections regulation, and (2) the use of force is reasonably necessary and appropriate to maintain order. For purposes of interpreting this statute, we must apply the definition of "force" codified in AS 11.81.900(b)(27)— "any bodily impact, restraint, or confinement

or the threat of imminent bodily impact, restraint, or confinement." Accordingly, a corrections officer has no special justification to use force against an inmate under AS 11.81.410(a) unless there is a Department of Corrections regulation which authorizes that use of force.

If we followed the State's suggestion and gave a narrow interpretation to the phrase "physical force" in 22 AAC 05.060—construing this phrase so that it was not co-extensive with the statutory definition of "force" codified in AS 11.81.900(b)(27), but was, instead, limited to the actual, active application of physical force—then there would be no Department regulation authorizing corrections officers to use threats of force, restraint, or confinement against an inmate. Thus, a corrections officer's threat of such measures would constitute "force" for purposes of our criminal code, but the officer's conduct would not be justified under the provisions of AS 11.81.410(a). This result seems illogical, and it is clearly not a result that the State would favor.

■ The second flaw in the State's argument is that it appears to be based on a misunderstanding of the law of self-defense. The State relies heavily on the fact that, even viewing the evidence in the light most favorable to Bachmeier's proposed defense, there was no evidence that Dominguez struck Bachmeier, or otherwise actively used force upon him, until after Bachmeier punched Dominguez. But Bachmeier's claim of self-defense did not require him to show that Dominguez struck him first.

Our general self-defense statute, AS 11.81.330(a), states that a person is justified in using non-deadly force against another person "when and to the extent the person [using the force] reasonably believes [that this force] is necessary for self-defense against what the person reasonably believes

to be the use of unlawful force by the other person."

■ Even though the wording of this statute might suggest that a person is not allowed to act in self-defense until the other person is actually using unlawful force upon them, the right of self-defense has always been construed in a broader fashion. The law allows a person to use force defensively when the person reasonably believes that another person is imminently going to subject them to unlawful force—even when, in hindsight, the person's belief turns out to have been mistaken.[1]

Viewing the evidence in the light most favorable to Bachmeier's claim of self-defense, the jury could have concluded that Bachmeier actually and reasonably believed that Dominguez was about to strike him without justification (*i.e.*, about to strike him in circumstances where Dominguez's act of striking Bachmeier would not be justified under the governing Department regulation, 22 AAC 05.060). If this was so, then Bachmeier would have been entitled to use reasonable non-deadly force against Dominguez in self-defense, even though Dominguez did not actually strike him first.

### Conclusion

As explained in this opinion, the jurors were not correctly instructed on the question of what force a corrections officer can justifiably use against an inmate. And there is a substantial possibility that the verdict at Bachmeier's trial would have been different if the jurors had been correctly instructed on the rules governing a corrections officer's use of force. We accordingly REVERSE the judgment of the superior court.

---

1. *See Wilkerson v. State*, 271 P.3d 471, 475 (Alaska App.2012); *McCracken v. State*, 914 P.2d 893, 898 (Alaska App.1996); *Ha v. State*, 892 P.2d 184, 194 (Alaska App.1995).